994 So.2d 980 (2008)
WACHOVIA INSURANCE SERVICES, INC., et al., Appellants,
v.
Richard L. TOOMEY, etc., et al., Appellees.
No. SC06-1110.
Supreme Court of Florida.
September 29, 2008.
*981 John H. Pelzer, Donald A. Mihokovich, and Brigid F. Cech of Ruden, McClosky, Smith, Schuster, and Russell, P.A., Fort Lauderdale, FL, for Appellants.
Lisa K. Hsiao, Romeo S. Quinto, Jr., and James F. Hibey of Howrey, LLP, Washington, D.C., and Valeria Hendricks and Cody F. Davis of Davis and Harmon, P.A., Tampa, FL, for Appellees.
PER CURIAM.
This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. For the reasons explained below, we provide the following three answers to the issues raised by the certified questions: (1) a settlement agreement between two parties that explicitly contains both an assignment of causes of action against a third party insurer and an immediate release of the insured on the same causes of action is valid and not barred by our opinion in Fidelity & Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla.1985); (2) the claim for breach of fiduciary duty arising from the relationship between the insurance broker and the insured involving allegations of failure to provide insurance coverage was also assignable as it is analogous to a cause of action for bad faith; (3) the claim for negligent failure to procure insurance coverage should not have been dismissed as a matter of law based on Moss v. Appel, 718 So.2d 199 (Fla. 4th DCA 1998), was assignable, and should have been submitted to the jury. As to Issue I, Chief Justice Quince, Justice Anstead, Justice Pariente, and Justice Bell agree that Cope does not control and that the agreement constituted a valid assignment. Accordingly, we answer the first certified question in a manner that demonstrates that a settlement agreement between two parties that simultaneously assigns causes of action against a third party insurer and releases the insured on the same causes of action is valid. Justice Lewis dissents on this issue because in his view, as elaborated in his separate opinion, Cope does control the outcome of this case. Senior Justice Cantero agrees with Justice Lewis on this issue. As to Issue II, Chief Justice Quince, Justice Anstead, Justice Pariente, and Justice Lewis agree that the cause of action for breach of fiduciary duty is assignable. Justice Anstead and Justice Lewis disagree with the reasoning employed. Justice Bell disagrees that the breach of fiduciary duty, as a personal *982 tort, is assignable. Senior Justice Cantero agrees with Justice Bell on this point. As to Issue III, all participating justices agree that the district court erred as a matter of law in dismissing the negligence claim, which is assignable and which stated a cause of action for negligent failure to procure insurance coverage. Accordingly, we answer the first and second certified questions in the affirmative and further explain that the negligence claim arising out of the insurance broker relationship should not have been dismissed.

FACTS AND PROCEDURAL HISTORY
The instant action arises from the decision of the United States Court of Appeals for the Eleventh Circuit in Toomey v. Wachovia Insurance Services, Inc., 450 F.3d 1225 (11th Cir.2006), wherein the circuit court certified the following questions for determination under Florida law:
I. WHAT IS THE EFFECT OF A SETTLEMENT AGREEMENT BETWEEN TWO PARTIES THAT EXPLICITLY CONTAINS BOTH AN ASSIGNMENT OF CAUSES OF ACTION AGAINST A THIRD PARTY INSURER AND AN IMMEDIATE RELEASE OF THE INSURED ON THE SAME CAUSES OF ACTION?
II. CAN A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST AN INSURANCE BROKER BE ASSIGNED?
Id. at 1231.
The facts of the underlying action, as summarized in the Eleventh Circuit's opinion, are as follows. Brian Holman and Richard Toomey were employees and officers of IMC, a mortgage business based in Tampa, Florida. Wachovia was the insurance broker for IMC. In 1997, IMC purchased Holman and Toomey's mortgage business, Central Money Mortgage (CMM), and Holman and Toomey were appointed officers and employees of IMC's subsidiary. Each man had a five-year employment contract with an annual salary of $300,000 and a severance clause requiring IMC to pay their full salary for the years remaining on the contract if IMC terminated Toomey or Holman without cause. Also in 1997, Joel Williams sold IMC an Employment Practices Liability Insurance Policy (the Policy) that covered claims for breaches of written employment contracts. Under financial pressure, IMC decided to cease operations of its subsidiary and notified Holman and Toomey that it planned to terminate their employment contracts.
Holman and Toomey sued IMC in the United States District Court for the District of Maryland, alleging that they had been formally terminated without cause. This litigation resulted in a judgment of $1.8 million in favor of Holman and Toomey against IMC. IMC was unable to satisfy the judgment and initiated settlement negotiations. During these negotiations, IMC discovered that it had lost the Policy's coverage for breach of employment contract claims. Because the Policy had been due to expire during litigation, IMC had extended its coverage with Wachovia for several months to cover any potential claims, such as Holman and Toomey's breach of employment contract claims. However, in extending the Policy, Wachovia is alleged to have summarily removed coverage for breach of written employment contract claims without IMC's knowledge. To satisfy the outstanding $1.8 million judgment, IMC executed a settlement agreement with Holman and Toomey. Under the terms of the agreement, Holman and Toomey, for consideration of $1.5 million, dismissed all their causes of action against IMC except the counts for breach of their employment contracts. Holman and Toomey, however, expressly reserved their claims against Wachovia. Additionally, IMC agreed to assign Holman and Toomey "all its rights, including its causes of action, which rights IMC may have under *983 or because of the existence of [the Policy]... to secure indemnification sufficient to satisfy" the $1.8 million judgment. Id. at 1228.
Subsequently, Holman and Toomey brought suit against Wachovia in the United States District Court for the Middle District of Florida in August 2003. Pursuant to IMC's assignment of the potential claims, Holman and Toomey alleged that: (1) Wachovia breached fiduciary duties owed to IMC; and (2) Wachovia was negligent in its dealings with IMC. Holman and Toomey also alleged two direct claims against Wachovia: (1) the intentional interference with their rights under their employment contracts; and (2) the breach of fiduciary duties allegedly owed by Wachovia directly to them. Specifically, under Count 2 of the first amended complaint entitled "Breach of Fiduciary Duties Owed Plaintiffs," Holman and Toomey alleged that Wachovia "breached [its] obligation[] of loyalty to Plaintiffs and duty to carefully manage their claims under the Policy when, with actual knowledge of an existing claim of Plaintiffs, [it] failed to notify or advise IMC to notify the insurance company of the claim, but instead, in conspiracy with other IMC officers and employees, designed the Subject Endorsement to exclude claims for breach of written employment contracts from the Policy." Under Count 3, which is entitled "Breach of Fiduciary Duty Owed IMCRights Assigned to Plaintiffs," Holman and Toomey alleged that Wachovia "negligently or intentionally or maliciously failed to advise or consult IMC about the Subject Endorsement, failed to make inquiries of IMC to determine the impact of the Subject Endorsement on current or future litigation IMC faced, and failed to maintain coverage for Plaintiffs' breach of employment contract claims in the Maryland Litigation." Finally, under Count 4, which is the negligence claim, Holman and Toomey alleged that Wachovia, as insurance broker for IMC and them, "owed duties of care and loyalty to IMC and Plaintiffs that obligated [Wachovia] to advise and consult with them on insurance coverage issues, the filing of claims under the Policy, and the obtaining and maintenance of the coverage afforded by the Policy," but failed to follow through with that duty.
The district court granted Wachovia judgment as a matter of law on all claims except the assigned claim for breach of fiduciary duties owed by Wachovia to IMC, which was submitted to the jury. The district court ruled that based on the Fourth District's decision in Moss, 718 So.2d at 199, the negligence claim was moot, and only the breach of fiduciary duty claim could be presented to the jury because there was a fiduciary relationship between Wachovia and IMC.[1]
*984 With regard to the breach of fiduciary duty claims, the district court instructed the jury that they were to consider whether Wachovia breached its fiduciary duty owed to IMC and Holman and Toomey as assignees of IMC. The district court explained when a fiduciary obligation exists, and further explained that when a person undertakes the responsibility to act for another in a fiduciary relationship, "the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the client, or from acting for the fiduciary's own benefit in relation to the subject matter of their relationship." The district court also laid out the three elements that Holman and Toomey were required to prove to recover on the claim, which included: (1) the existence of a fiduciary relationship between IMC and Wachovia; (2) a violation of that fiduciary obligation by Wachovia; and (3) damages suffered by Holman and Toomey as a proximate result of one or more of these violations of the fiduciary obligation. The court also told the jury that under the first element, they "must accept the fact that a fiduciary relationship existed between IMC and Wachovia as proven" because as an insurance broker, Wachovia stood in a fiduciary relationship with its clients by operation of law. Under the second element, the court listed several ways in which Wachovia could have violated its fiduciary obligation, such as "failing to adequately explain to IMC that the employment practices liability insurance policy covered claims alleging the breach of a written employment contract," "failing to obtain proper approval from IMC to add the endorsement," and "failing to advise IMC about the impact of the proposed endorsement on IMC's risk exposure and existing employment relationships." The jury returned a verdict of $1,069,200.00 in favor of Holman and Toomey on this claim.
Wachovia appealed to the Eleventh Circuit, arguing that the district court erred because (1) Holman and Toomey released IMC, thereby also releasing Wachovia of liability; (2) claims for breach of fiduciary duty cannot be assigned; and (3) Holman and Toomey should not be allowed to receive attorney's fees on behalf of IMC where IMC failed to assign attorney's fees to Holman and Toomey, and where Holman and Toomey failed to prove the specific amount of attorney's fees incurred by IMC. Holman and Toomey cross-appealed, arguing that the district court erred in granting judgment as a matter of law to Wachovia on their other claims. Id. at 1228. On appeal, the Eleventh Circuit found that dispositive questions regarding Holman and Toomey's release of IMC and the assignability of a claim for breach of fiduciary duty are unsettled under Florida law, and certified both questions to this Court.

DISCUSSION

ISSUE I: Simultaneous Release of IMC and Assignment of IMC's Causes of Action against Wachovia to Holman and Toomey
The Eleventh Circuit's first certified question asks how to treat a settlement agreement that includes both a release of the insured company by the injured third party on a cause of action and an assignment by the insured company in favor of the injured party to permit the injured party to sue the insurer on the same cause of action. Wachovia contends IMC had no valuable rights left to assign to Holman because *985 Holman and Toomey released IMC from all liability in their settlement agreement, IMC paid no portion of the $1.8 million judgment entered against it, and IMC suffered no damage from any breach of fiduciary duty by Wachovia. On the other hand, Holman and Toomey assert that the same settlement agreement, by simultaneously reserving their rights to pursue Wachovia and others for their unpaid judgment against IMC, expressly did not release Wachovia from suit.
The settlement agreement in question was entered into in April 2001. Subsequently, in August 2001, Holman and Toomey and IMC executed the assignment pursuant to the provisions of the settlement agreement. Further, in August 2001, the United States District Court for the District of Maryland entered an order, which included both a $1.8 million judgment in favor of Holman and Toomey and a dismissal with prejudice of all other claims against IMC. After reviewing the settlement agreement, we find that although Holman and Toomey released IMC from liability in the agreement, the agreement also simultaneously assigned IMC's claims against Wachovia to Holman and Toomey.[2] The inclusion of the assignment in the settlement agreement permits Holman and Toomey to bring suit against Wachovia for any assigned claims that IMC had against Wachovia.
The Eleventh Circuit certified this question regarding the settlement agreement after finding no precedential authority in Florida law. The Eleventh Circuit stated that even though both Wachovia and Holman and Toomey cited to relevant Florida case law, none of the cases addressed the question of "whether a settlement agreement between two parties that explicitly contains both an assignment of causes of action against a third party (from IMC to Holman and Toomey) and an immediate release (by Holman and Toomey of IMC) allows the assignee to bring a cause of action for breach of fiduciary duty against the third party." Toomey, 450 F.3d at 1230. Wachovia contends that this case is analogous to Fidelity & Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985). We do not agree.
In Cope, the personal representative of a third party killed in a car accident brought an excess judgment action against the driver's insurer, alleging that the insurer negligently and in bad faith refused to negotiate a settlement of a previous *986 wrongful death claim. However, prior to filing suit, the personal representative executed a release and satisfaction of judgment in favor of the insured. The release was not preceded or accompanied by an assignment to the injured party of any bad faith claim then existing in favor of the insured. In this circumstance, we found that the personal representative could not bring action against the insurer of the driver because the excess judgment had been satisfied prior to filing suit. In addition, the cause of action had not been assigned prior to satisfaction of judgment. Id. at 461. In making this ruling, we held that "absent a prior assignment of the cause of action, once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained." Id. at 459.
We find that our decision in Cope does not apply in the instant case. Cope did not involve an assignment, much less a settlement agreement containing both a simultaneous assignment and release. In fact, we specifically noted in our decision in Cope that the insured never assigned his claim against the insurer to the injured party. Id. at 459 n. 1. Because Cope did not involve any assignment of an insured's claim against an insurer, Cope cannot directly answer the instant certified question regarding the effect of a settlement agreement between two parties that explicitly contains both an assignment of causes of action against a third party insurer and an immediate release of the insured on the same causes of action.
It seems that our use of the term "prior" in our decision in Cope may have been misunderstood to mean that an assignment of a claim cannot occur simultaneously with a release or satisfaction. Because an injured party's claim is derivative of the insured's claim against its insurer, our decision in Cope was meant to demonstrate that an injured party cannot maintain a claim against an insurer without an assignment from the insured if the injured party has released the insured from liability or if the injured party's judgment against the insured has been satisfied. Thus, an assignment of a claim against the insurer cannot occur after the release or satisfaction of the insured's claim because once the breach of duty is released or satisfied, the elements of the cause of action no longer exist. However, there is nothing in the language of the Cope decision that prohibits a simultaneous assignment of a claim with a release or satisfaction of the judgment.
Furthermore, the parties to the settlement agreement, Holman and Toomey and IMC, clearly intended to assign IMC's claims against Wachovia to Holman and Toomey. The parties did not intend to release Wachovia from liability. The appellate courts in Florida have recognized the "deeply rooted principle of Florida law that the intent of the parties controls interpretations of their releases." Rosen v. Fla. Ins. Guar. Ass'n, 802 So.2d 291, 295 (Fla.2001) (quoting Auto-Owners Ins. Co. v. St. Paul Fire & Marine Ins. Co., 547 So.2d 148, 150 (Fla. 2d DCA 1989)); see also Steil v. Fla. Physicians' Ins. Reciprocal, 448 So.2d 589 (Fla. 2d DCA 1984). This Court further stated in Stephen Bodzo Realty, Inc. v. Willits International Corp., 428 So.2d 225, 227 (Fla.1983), a case involving a written agreement releasing one of two joint and several obligors but not the other on the same obligation, that "[t]o allow these respondents to escape this obligation by relying on a document executed by others who had no intention of releasing them is the epitome of manifest injustice." This statement is equally applicable in the case now before us.
In the same paragraph where Holman and Toomey released IMC from its liability, *987 they emphasized that "nothing contained herein shall operate to release or waive any claims the Releasors might have or herein acquire against the insurance companies specified in Sections 3(d) and (e) below." Thus, we find that the intent of the parties to the settlement agreement, Holman and Toomey and IMC, was not to release Wachovia from liability. Wachovia should not be allowed to escape liability by relying on a document executed by others when those parties did not intend to release Wachovia from liability.
Accordingly, we hold that a settlement agreement between two parties that explicitly contains both an assignment of causes of action against a third party (from IMC to Holman and Toomey) and an immediate release (by Holman and Toomey of IMC) allows Holman and Toomey to bring the assigned causes of action against Wachovia.

ISSUE II: Assignability of a Claim for Breach of Fiduciary Duty
The Eleventh Circuit's second certified question asks whether a claim for breach of fiduciary duty against an insurance broker may be assigned. Wachovia contends that this Court's recent decision in Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So.2d 755 (Fla.2005), makes it clear that a breach of fiduciary duty is intensely personal because it arises out of a highly confidential relationship, and thus is non-assignable. On the other hand, Holman and Toomey assert that this Court in Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557 (Fla.1997), receded from on other grounds by Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So.2d 755, 757 (Fla.2005), held that the relationship between an insured and an insurance broker is not so personal as to preclude an assignment of the claim against the insurance broker.
Wachovia contends that in determining whether the cause of action is assignable, it is the type of duty allegedly breached that has to be identified, not the parties. On the other hand, Holman and Toomey contend that only identifying the duty sets out a bright line rule that all breaches of fiduciary duty are non-assignable. Holman and Toomey argue that instead the relationship between the parties should be examined to determine whether the cause of action is assignable. After reviewing comparable cases, we find that both the duty and the relationship must be examined to determine whether the cause of action is assignable. In the instant case, both the examination of the relationship between the parties and the duty breached lead to the conclusion that the cause of action against Wachovia is assignable.
The relationship between IMC and Wachovia was that of an insurance broker and insured. Therefore, Wachovia had the duty to inform and explain the coverage it was providing to IMC and to advise IMC of the changes Wachovia was making to IMC's insurance policy. This Court analyzed the nature of a similar type of relationship in Forgione. We compared the relationship between a prospective insured and an insurance agent to that of an attorney and client. We explained in dicta that an attorney-client relationship is a very personal and confidential relationship because of the constraints placed on communication of the client's information to others. On the other hand, we found that "the relationship between a prospective insured and an insurance agent is substantially different" because "[t]he law does not impose similar constraints on communications between an insurance agent and an insured" as it does on communications between an attorney and a client. 701 So.2d at 560. Furthermore, we found that while an attorney-client relationship is personal in that "[a]n attorney may not substitute *988 another attorney in his or her place without the client's permission," in an insurance agent-insured relationship, "insurance agents are often substituted without prior notification to the insured." Id. Because the instant case involves an insurance broker-insured relationship, our determination in Forgione applies here. Thus, similar to the relationship in Forgione, the relationship between IMC and Wachovia is not so personal and confidential that the cause of action cannot be assigned to Holman and Toomey.
Second, an assessment of the duty breached by Wachovia also weighs in favor of assignability. In Cowan, this Court made a similar assessment concerning the duty breached in regard to the legal services an attorney provided to determine whether a legal malpractice claim could be assigned to a third party. In Cowan, we receded from the dicta in Forgione prohibiting the assignment of all legal malpractice claims. 902 So.2d at 757. While acknowledging that the vast majority of legal malpractice cases could not be assigned because of the personal relationship between attorney and client, we said that the legal service itself has to be examined to determine whether or not it is personal in nature. As to the particular facts of Cowan, we determined that the claims assigned did not "involve personal services or implicate confidentiality concerns." Id. at 761. Even though laid out in the context of an attorney-client relationship, our decision in Cowan indicates that it is not only the relationship, but also the nature of the services rendered that must be assessed to determine whether a cause of action is assignable.
In Forgione, the district court certified the question of whether a claim for negligence by an insured against an insurance agent for failure to obtain proper insurance coverage could be assigned to a third party. In examining this question, we distinguished particular claims that could be assigned and those that were considered personal. We held that causes of action based on a contract or a statute could be assigned. Forgione, 701 So.2d at 559. In addition, an insured's cause of action against an insurance agent for failure to settle a claim in good faith was also determined to be assignable. Id. However, the Court held that "purely personal tort claims cannot be assigned under Florida law." Id. Examples of purely personal tort claims that were held not to be assignable were claims for medical malpractice and claims for intentional infliction of emotional distress. Id. (citing Fla. Patient's Comp. Fund v. St. Paul Fire & Marine Ins. Co., 535 So.2d 335 (Fla. 4th DCA 1988), approved, 559 So.2d 195 (Fla.1990); Notarian v. Plantation AMC Jeep, Inc., 567 So.2d 1034 (Fla. 4th DCA 1990)). Thus, the question to determine in the instant case is whether or not the duty breached is a personal tort.
In the district court, the jury found Wachovia to have violated its fiduciary duty to IMC in one of several ways.[3] In examining *989 the particular ways in which Wachovia breached its duty to IMC, the breach of fiduciary duty claim appears to actually be a "bad faith" claim, which Florida courts have held to be assignable. As explained by this Court in Cope, "[t]he essence of a `bad faith' insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim ... all of which results in the insured being exposed to an excess judgment." Cope, 462 So.2d at 460 (quoting Kelly v. Williams, 411 So.2d 902, 904 (Fla. 5th DCA 1982)). When Wachovia summarily removed coverage for IMC's breach of employment contract claims, Wachovia, in essence, refused to defend IMC against the judgment entered in favor of Holman and Toomey. Wachovia did breach its duty by acting in bad faith, which resulted in IMC being exposed to an excess judgment that it was not able to pay. Thus, this claim is in essence a "bad faith" claim, which has been held to be assignable in Florida courts. See Aaron v. Allstate Ins. Co., 559 So.2d 275 (Fla. 4th DCA) (holding that the insured's cause of action against insurer for failure to provide adequate defense was assignable because not based on a personal tort), review denied, 569 So.2d 1278 (Fla.1990); see also Higgs v. Indus. Fire & Cas. Ins. Co., 501 So.2d 644 (Fla. 3d DCA 1986) (holding that the insured may validly assign to a third party the right to pursue the insured's bad faith claim against his insurer); McNulty v. Nationwide Mut. Ins. Co., 221 So.2d 208 (Fla. 3d DCA) (concluding that a bad faith action is assignable because it arises out of the insurance contract whereby the insurer has a contractual obligation to exercise good faith in settling claims), cert. discharged, 229 So.2d 585 (Fla.1969); Selfridge v. Allstate Ins. Co., 219 So.2d 127 (Fla. 4th DCA 1969).
Because the insurance broker-insured relationship between IMC and Wachovia was not a confidential relationship, and because the breach of duty claim against Wachovia was essentially a bad faith claim, the cause of action in the instant case is assignable by IMC to Holman and Toomey. Accordingly, for purposes of the instant case, we answer the second certified questioncan a claim for breach of fiduciary duty against an insurance broker be assignedin the affirmative.

ISSUE III. Negligence Claims Against an Insurance Broker
We also address one of the issues raised on cross-appeal. As more fully explained, we conclude that the jury in this case should have been allowed to consider Holman and Toomey's negligence claim, a claim that is assignable under Florida law. Because the Eleventh Circuit's decision has provided us with broad latitude to address the determinative, substantive issues of Florida law, our conclusion regarding a breach of fiduciary duty claim does not end our analysis. See Toomey, 450 F.3d at 1231 ("The phrasing of these two questions is not intended to limit the Florida Supreme Court's consideration of the issues involved or the manner in which it gives its answers."). In the federal district court, Holman and Toomey raised a negligence claim in addition to their breach of fiduciary duty claim. Specifically, in Count 4 of their first amended complaint (entitled "NegligenceDuties Owed To and Assigned to Plaintiffs"), Holman and Toomey alleged that Wachovia "owed duties of care and loyalty to IMC and *990 Plaintiffs that obligated Defendants to advise and consult with them on insurance coverage issues, the filing of claims under the policy, and the obtaining and maintenance of the coverage afforded by the policy."[4] According to Holman and Toomey, Wachovia breached these duties "by agreeing on IMC's behalf to the addition of the Subject Endorsement to the Policy without advising or consulting IMC and Plaintiffs of the Subject Endorsement and its impact on pending and future employed-related litigation." However, this negligence claim never went to the jury. Instead, the federal district court granted judgment as a matter of law and dismissed the negligence claim. Toomey, 450 F.3d at 1226-27. Holman and Toomey appealed this dismissal to the Eleventh Circuit. Id.[5]
After reviewing the record, it is clear that the federal district court dismissed the negligence claim as a matter of Florida law. The district court ruled that under Moss v. Appel, 718 So.2d 199 (Fla. 4th DCA 1998), only the fiduciary duty claim could be presented to the jury because there was a fiduciary relationship between the insurance broker and the insured. However, Moss misstates Florida law when implying that the existence of a fiduciary relationship prevents a jury from considering both a breach of fiduciary duty claim and a negligence claim. Under Florida law, negligence claims and breach of fiduciary duty are separate causes of action. Indeed, insurance brokers will often have both a fiduciary duty to their insured-principals and a common-law duty to properly procure requested insurance coverage. See, e.g., Romo v. Amedex Ins. Co., 930 So.2d 643, 654 (Fla. 3d DCA 2006) ("[W]here an insurance agent or broker undertakes to obtain insurance coverage for another person and fails to do so, he may be held liable for resulting damages to that person for breach of contract or negligence.") (quoting Klonis v. Armstrong, 436 So.2d 213, 216 (Fla. 1st DCA 1983)), review denied, 949 So.2d 197 (Fla. 2007); Randolph v. Mitchell, 677 So.2d 976, 978 (Fla. 5th DCA 1996) (stating that an insurance broker owes a fiduciary duty to the insured-principal). As a result, negligence and breach of fiduciary duty can be pled in the alternative.
Furthermore, under Florida law, negligence claims against an insurance broker are assignable. See, e.g., Forgione, 701 So.2d at 560 ("[W]e conclude that public policy considerations do not preclude the assignment of an insured's claim for negligence against an insurance agent."), receded from on other grounds by Kaplan, 902 So.2d at 757.

CONCLUSION
In answering the first certified question, we hold that the settlement agreement properly assigned IMC's cause of action against Wachovia to Holman and Toomey because the assignment of the causes of action against Wachovia was done simultaneously with the release of IMC from all liability. However, we also conclude that, under Florida law, the jury in this case should have been allowed to consider Holman and Toomey's assignable negligence claim. Lastly, we answer the second certified question in the affirmative. We find *991 that a claim for a breach of fiduciary duty against Wachovia is comparable to a bad faith claim and it thus constitutes an assignable claim. We return this case to the United States Court of Appeals for the Eleventh Circuit with these answers to the certified questions.
It is so ordered.
QUINCE, C.J., and ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., specially concurs with an opinion.
LEWIS and Bell, JJ., concur in part and dissent in part with an opinion.
CANTERO, Senior Justice, concurs in part and dissents in part.
WELLS, J., recused.
ANSTEAD, J., specially concurring.
I concur in the majority opinion in all respects, except that I concur in conclusion only in the majority's holding that the breach of fiduciary duty claim is assignable.
LEWIS, J., concurring in part, dissenting in part.
I write separately because, in my view, our decision in Fidelity & Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985) ("Cope II"), should control the majority's analysis of issue I. In contrast, the majority has failed to adequately consider the central aspect of Cope IIthe "prior-assignment" rulewhich should clearly apply with particular force in this case given that the release from liability preceded the assignment of claims by approximately four months. Thus, if the majority properly applied Cope II, that decision would render the purported assignment we address here a legal nullity and, as a result, any assignability questions (i.e., issues II and III) would be purely academic and moot. I therefore dissent with regard to the majority's analysis of issue I.
Nevertheless, since the majority has overlooked Cope II and improperly characterized the prior-assignment rule as immaterial dicta, I also express my position with regard to issues II and III. As further explained in my analysis, IMC's fiduciary-duty claim is assignable based on our case-by-case relationship-duty analysis because this claim involves an insured-insurance broker relationship, and the duties allegedly breached involve the negligent procurement of insurance coverage, which is an assignable cause of action under Florida law. Consequently, I agree in principle with the majority concerning issue II, but I do not agree that a relationship involving an insured and an insurance brokeras opposed to an insured and an insureris akin to a bad-faith claim. Finally, with regard to issue III, I agree with the majority that Moss v. Appel, 718 So.2d 199, 201-02 (Fla. 4th DCA 1998), misstates Florida law in concluding that the existence of a fiduciary relationship prevents a jury from considering both a fiduciary-duty claim and a negligence claim when the plaintiff has pled these causes of action in the alternative.
Accordingly, I:(A) dissent with regard to issue I; (B) concur in the result only with regard to issue II; and (C) fully concur in the majority's position with regard to issue III.

I. BACKGROUND
This case involves a 2001 settlement agreement between IMC (the former employer) and Holman and Toomey (the former employees). The majority interprets the agreement as an attempt to simultaneously release IMC from all liability with regard to Holman and Toomey's employment-contract claims and to assign to Holman and Toomey all potential causes of *992 action IMC may have had against its insurers "or others" concerning coverage under an employment-practices-liability insurance policy. This policy would have provided insurance coverage for these released employment-contract claims, but such coverage was not obtained due to the alleged failure of Wachovia to fulfill IMC's coverage request. The release portion of the settlement agreement provided as follows:
The Releasors [i.e., Holman and Toomey], for so long as this Settlement Agreement and Release is not rescinded pursuant to Section 6 below, do hereby release, acquit, and forever discharge the Releasees [i.e., IMC] from and against any and all claims, demands, proceedings, actions, causes of action, damages, debts, sums of money, costs, attorneys' fees, obligations, contracts, agreements, and liabilities of whatsoever nature, whether known or unknown, suspected or unsuspected, both at law and at equity, and whether based on contract, tort, fraud, intentional act or violation of any securities or other law, having already resulted or to result in any time in the future; provided, however, that nothing contained herein shall operate to release or waive any claims the Releasors [i.e., Holman and Toomey] might have or herein acquire against insurance companies specified in Sections 3(d) and (e) below, Wachovia Davis Baldwin, or any partner, shareholder, associate, employee, servant, agent or broker of Chubb/Federal Insurance Company or Wachovia Davis Baldwin for claims which arise out of the claims referenced in Sections 3(d)-(e) below, including, but not limited to, any claims which may be made directly or indirectly to satisfy the $1.8 million judgment awarded by the Court in the Litigation, and further provided that nothing contained herein shall operate to release any obligations of the parties to this Agreement arising under this Agreement.
The alleged assignment portion of the settlement agreement provided for future documents as follows:
The Plaintiffs [i.e., Holman and Toomey] contend that their claims for improper termination of their employment agreements are or should have been covered under the terms of [the employment-practices-liability insurance policy]. IMC will promptly execute the necessary documents to assign to Plaintiffs, without recourse and without representations or warranties whatsoever, all its rights, including its choses in action, which rights IMC may have under or because of the existence of that policy against Chubb/Federal Insurance Company or others to secure indemnification sufficient to satisfy the $1.8 million judgment awarded Plaintiffs by the Court in the Litigation[.]
(Emphasis supplied.)
After Holman and Toomey filed an action based on the assigned claims against Wachovia in the United States District Court for the Middle District of Florida, and cross-appeals to the Eleventh Circuit Court of Appeals, the federal appellate court certified two dispositive questions of Florida law to this Court concerning: (1) the effect of a settlement agreement that contains both an assignment of claims and a release from liability; and (2) the assignability vel non of a fiduciary-duty claim. See Toomey v. Wachovia Ins. Servs., Inc., 450 F.3d 1225, 1231 (11th Cir.2006).
With regard to the first certified question, the majority incorrectly holds that the "prior-assignment" language appearing in Cope II constitutes dicta as applied to cases involving an attempted simultaneous release from liability and an assignment of claims:

*993 It seems that our use of the term "prior" in our decision in Cope [II] may have been misunderstood to mean that an assignment of a claim cannot occur simultaneously with a release or satisfaction.... However, there is nothing in the language of the Cope [II] decision that prohibits a simultaneous assignment of a claim with a release or satisfaction of the judgment.
Majority op. at 986 (emphasis supplied). However, the majority also correctlyalthough incompletelyobserves:
[O]ur decision in Cope [II] was meant to demonstrate that an injured party cannot maintain a claim against an insurer without an assignment from the insured if the injured party has released the insured from liability.... Thus, an assignment of a claim against the insurer cannot occur after the release ... because once the breach of duty is released..., the elements of the cause of action no longer exist.

Majority op. at 986 (emphasis supplied). The majority's mixed message leaves Florida law concerning Cope II uncertain at best (especially given that the release and assignment involved here were not executed simultaneously).

II. ANALYSIS

A. The Prior-Assignment Rule of Cope II and Kelly

The majority's attempted marginalization of Cope II's prior-assignment rule ignores the impetus for our decision in that case and further ignores the conflicting district-court opinions that prompted this Court's action in Cope II. The express-and-direct conflict of decisions that preceded Cope II clearly demonstrates that this Court addressed and resolved a clear rule of law with regard to the order in which parties must execute releases and assignments if they intend to ensure the effective transfer of derivative causes of action. If we were writing on a clean slate, I would whole heartedly disagree with the holding of Cope II because of its tendency to thwart the intent of the parties and its contradiction of general principles of contract law. However, a clear reading of the conflicting decisions resolved in Cope II demonstrates that we undoubtedly articulated and adopted the prior-assignment rule as the law of Florida, and to implicitly, rather than explicitly, address this central aspect of the decision will only create undue confusion in our jurisprudence.
A review of the conflict decisions resolved in Cope IIKelly v. Williams, 411 So.2d 902 (Fla. 5th DCA 1982), and Fidelity & Casualty Co. of New York v. Cope, 444 So.2d 1041 (Fla. 2d DCA 1984) ("Cope I")clearly demonstrates that the "prior-assignment" holding was the critical and dispositive conflict issue determined in Cope II. In 1982, the Fifth District issued its decision in Kelly, which involved the attempted simultaneous execution of a release of an insured and a reservation of rights to sue an insurer. See 411 So.2d at 903. The injured claimant, Kelly, entered into a settlement agreement with an insured-tortfeasor and the insurer, Allstate. See id. at 903-04. The settlement agreement included a satisfaction of judgment as to the insured, the insurer's payment of $50,000 to the injured claimant, and a covenant not to execute (or sue). See id. However, the agreement also included a purported reservation of rights to sue the insurer:
[I]t is also stipulated and agreed that the payment of the Fifty Thousand Dollars ($50,000) to Plaintiff as agreed herein, and the agreement to satisfy judgment contained herein and the agreement not to execute as contained herein, will not operate to prevent or hinder [the insured] and/or Plaintiff *994 from filing a legal action against [the insurer] for alleged bad-faith.

Id. at 904 (emphasis supplied).
Despite this apparent simultaneous execution of a release and a reservation of rights, the Fifth District held that the injured claimant never received a viable bad-faith claim. The simultaneous release eliminated the underlying cause of action. The district court acknowledged that its construction of the settlement agreement frustrated the stated intent of the parties (i.e., to settle the claim against the insured in exchange for a simultaneous reservation of rights against the insurer), but stated that this construction was the only sound legal disposition given the wholly derivative nature of a third-party bad-faith claim:

Under the arrangement stipulated to by the parties in this case, the insured could not be exposed to an excess judgment under any circumstances. If one was obtained, the insured was entitled to a complete satisfaction of it, as soon as the judgment became final or enforceable. The stipulation completely safeguarded the insured, and therefore it completely discharged the insurer's duty to its insured.

Id. at 904 (emphasis supplied). "Kelly's attempted reservation of his rights against the insurer w[as] not effective, since in the body of the stipulation, the baby was thrown out with the bath water." Id. at 905. Applying the principle of Kelly to the instant case, IMC cannot be exposed to a judgment under any circumstances. "The stipulation completely safeguarded the insured, and therefore it completely discharged the insurer's duty to its insured." 411 So.2d at 904. Kelly clearly held that a simultaneous release and attempted reservation of rights operates to release the derivative claim of the injured claimant.
In 1984, the Second District decided Cope I in which it disagreed with Kelly and articulated its own approach to this issue. In Cope I, the parties executed a settlement agreement through which they released and intended to release only the insured and the primary insurer (Hartford), not an additional insurer (Fidelity). See 444 So.2d at 1043-44. The settlement agreement included a release and a partial satisfaction of a judgment. See id. However, the parties clearly intended for $30,000 of the injured claimant's $100,000 judgment to remain unsatisfied as to the additional insurer, and contemplated that the claimant would retain a claim to recover the remaining sum from that particular insurer. The Second District held that
an injured party/judgment creditor may maintain suit directly against a tortfeasor's liability insurer for judgment in excess of the policy limits based upon bad faith of the insurer in the conduct or the handling of the original claim. Hence, it is a separate and distinct cause of action.

Cope I, 444 So.2d at 1044 (emphasis supplied) (citations omitted) (citing Thompson v. Commercial Union Ins. Co. of N.Y., 250 So.2d 259, 264 (Fla.1971) (holding "that a judgment creditor may maintain suit directly against [the] tortfeasor's liability insurer for recovery of the judgment in excess of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit"); Kelly, 411 So.2d at 905 (Cowart, J., dissenting)). In contrast, Kelly had previously held that such claims are wholly derivative of the insured's underlying rights vis-à-vis his or her insurer and that due to this derivative nature, if the insured was protected and released from the underlying claim, the injured claimant necessarily lacked any right to relief because the release barred any derivative action. In other words, the simultaneous release destroyed the underlying claim, which precluded any future action.
*995 Therefore, in Cope II, this Court encountered two opposing conceptions of derivative actions: (i) a concurrent settlement with and release of an insured did not preclude a derivative action against the insurer-wrongdoer (Cope I), versus (ii) a settlement with and release of an insured precluded a derivative action against the insurer-wrongdoer when accomplished in the same document (Kelly). This Court specifically rejected the Second District's holding in Cope I, which clearly would have permitted the simultaneous exchange of a release and an assignment based upon the intent of the parties and, instead, held that when causes of action are wholly derivative of the rights of the insured, the prior-assignment rule of Kelly supplies the only approach to preserve the cause of action. See Cope II, 462 So.2d at 460-61, approving Kelly, 411 So.2d at 904. The combined essence of Cope II and Kelly then is that an agreement totally insulating the insured from further liability that is not preceded by an assignment of rights violates the prior-assignment rule. Other Florida and federal decisions, which have considered and analyzed the rule of Cope II, have clearly interpreted the law of Florida to require a prior assignment if the cause of action is to be preserved. See, e.g., Rosen v. Fla. Ins. Guar. Ass'n, 802 So.2d 291, 294 (Fla.2001) (describing Cope II as holding that if a judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain action for a breach of duty between an insurer and its insured (citing Cope II, 462 So.2d at 461)); Oppenheim v. Reliance Ins. Co., 804 F.Supp. 305, 310 (M.D.Fla.1991) (holding that an assignment executed approximately three months post-release does not meet "prior assignment" requirement of Cope II), aff'd, 968 F.2d 23 (11th Cir.1992). These decisions unmistakably interpret the "prior assignment" concept as the essential holding of Cope II, which resolved the conflict that had previously existed in Florida law between Cope I and Kelly.
Our rule and rationale in Cope II require that the assignment definitively precede the release regardless of the true intent of the parties. See 462 So.2d at 460-61 (relying upon Kelly, 411 So.2d at 904-05). The essential theory is that the release terminates the underlying derivative rights between the insured and injured claimant, which leaves nothing to be assigned or surrendered to the claimant. Furthermore, even assuming arguendo the debatable validity of the majority's interpretation of Cope II (which would permit the "simultaneous" exchange of a release and assignment), under the facts of this case, it is clear that IMC and Holman and Toomey did not execute a simultaneous assignment and release. Instead, IMC and Holman and Toomey executed a release and an agreement to assign in the future. As stated in the preceding background section, the "assignment" portion of the settlement agreement here provided that
IMC will promptly execute the necessary documents to assign to Plaintiffs, without recourse and without representations or warranties whatsoever, all its rights, including its choses in action, which rights IMC may have under or because of the existence of that policy against Chubb/Federal Insurance Company or others to secure indemnification sufficient to satisfy the $1.8 million judgment awarded Plaintiffs by the Court in the Litigation[.]
(Emphasis supplied.) In clear, unambiguous terms, this contractual language provides that any assignment would occur subsequent to the execution of the settlement agreement through the use of separate "necessary documents." (Emphasis supplied.) Reference to the actual documents involved in this case confirms this *996 interpretation. Further, the majority itself explains the pertinent timeline: "The settlement agreement in question was entered into in April 2001. Subsequently, in August 2001, Holman and Toomey and IMC executed the assignment pursuant to the provisions of the settlement agreement." Majority at 985 (emphasis supplied). Even from the facts presented in the majority opinion, it is apparent that the settlement agreement affected a release, which contemplated a future assignment of claims against Wachovia and "others," but which did NOT actually contain the assignment. According to the majority, the separate assignment was not executed until four months later. Under Cope II, which adopted the Kelly approach, it is of no legal significance that a previously executed release contemplated a future assignment or a reservation of rights, which the parties subsequently documented: "[A]bsent a prior assignment of the cause of action, once an injured party has released the tortfeasor from all liability... no such action may be maintained." Cope II, 462 So.2d at 459 (emphasis supplied); see also Oppenheim, 804 F.Supp. at 310 (holding that contemplated future assignment executed approximately three months post-release did not satisfy prior-assignment rule of Cope II).
It clearly appears that IMC and Holman and Toomey executed their "Settlement Agreement and Release" on March 30, 2001, and executed a separate assignment agreement with the approval of the United States District Court for the District of Maryland on August, 1, 2001. The actual assignment at issue in this case occurred approximately four months after the release.[6] This subsequent assignment clearly violates the prior-assignment rule of Cope II, which renders the purported exchange null and void. See 462 So.2d at 459, 461; Oppenheim, 804 F.Supp. at 310. There was simply nothing available to assign after the release.
The formalistic prior-assignment rule of Cope II remains the law in Florida no matter how much I disagree with it. Cf. Chames v. DeMayo, 972 So.2d 850, 855 (Fla.2007) ("[T]he doctrine of stare decisis counsels us to follow our precedents unless there has been a significant change in circumstances after the adoption of the legal rule, or ... an error in legal analysis." (quoting Rotemi Realty, Inc. v. Act Realty Co., Inc., 911 So.2d 1181, 1188 (Fla.2005)) (quotation marks omitted)); State v. Green, 944 So.2d 208, 217 (Fla.2006) ("Stare decisis yields `when an established rule of law has proven unacceptable or unworkable in practice.'" (quoting Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005))). That being said, if we abandon a central aspect of Cope II because it has proven unacceptable or because it needlessly perpetuates an obvious legal error, we should do so explicitly and we should fully justify our decision with cogent, clearly defined reasoning, which openly declares our abandonment of prior precedent and its replacement with a more logical, efficacious, and utilitarian rule. In my view, the majority has not transparently disclosed what it has accomplished, or sought to accomplish, in this opinion. I fear that this clandestine reversal will engender unnecessary confusion in the law. In my view, the prior-assignment rule should remain the law unless we openly overrule Cope II. If the Court elected to do so, it would possess several grounds to justify its decision.
In my opinion, when Cope II was decided, it represented a poorly reasoned departure from longstanding precedent with regard to contract interpretation as well as *997 prior decisions from this Court with regard to the rights of third parties to file actions against insurers. For example, it had been established in Florida that contracts are interpreted according to the mutual intent of the parties. See, e.g., Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 So. 427, 428 (1907). Florida courts had also recognized that this general rule of construction applies to releases and settlement agreements. See Commercial Trading Co. v. Zero Food Storage, Inc., 199 So.2d 109, 112 (Fla. 3d DCA 1967); PS Marinas 3 v. Marina Funding Group, Inc., 889 So.2d 167, 169 (Fla. 3d DCA 2004). In fact, Florida courts had reformed contracts if the written instrument did not accurately reflect the intent of the parties. See, e.g., Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987). Well-established Florida precedent predating Cope II dictated that the intent of the parties would govern the construction of their contract and that the court could reform the agreement if the written instrument did not reflect their clear mutual intent. However, Cope II disregarded these options. Under Cope II, the written instrument could override the clear intent of the contracting parties.
Moreover, Holman and Toomey here, and the petitioner in Cope II, should have been permitted to pursue their claims against the insurance companies in their respective matters. Prior precedent had established that an assignment was not legally required because of the right of the injured claimant to bring these actions as a real party in interest. For example, in Shingleton v. Bussey, 223 So.2d 713, 715 (Fla.1969), this Court held that a third-party beneficiary of an insurance policy, as a real party in interest, had the right to maintain an action directly against an insurer. Subsequently, we held in Thompson v. Commercial Union Insurance Co. of New York, 250 So.2d 259, 264 (Fla. 1971), that a judgment creditor could pursue an excess-judgment claim directly against a tortfeasor's insurer based on the bad faith of the insurer with regard to the initial underlying action. See also Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980). In Thompson, the Court stressed that this right to sue the insurer for bad faith existed even though "[t]here was no assignment by the insured to petitioner of any possible claims against the insurer." 250 So.2d at 260. In Travelers Insurance Co. v. Perez, 384 So.2d 971 (Fla. 3d DCA 1980), the Third District addressed the issue of whether the release of an insurer by the insured could bar a subsequent bad-faith action against the insurer by a third-party beneficiary to the insurance contract. See id. at 972. The district court held that the release did not bar the claim and noted that the third-party beneficiary's "right to bring a direct action for bad faith against the insurer vested or accrued in her at the same time she became entitled to sue the insured." Id. at 973. The court in Perez reasoned that once the right of the third-party beneficiary accrued, no action between the insured and insurer could divest her of that right absent her consent. See id. Our decision in Cope II disregarded this longstanding precedentand the contracting parties' true intent with regard to the anticipated liability of an insurance companyby requiring that an assignment affirmatively precede (1) the bargained-for release of an insured, or (2) a satisfaction of judgment. See 462 So.2d at 459, 461.
While this rule has the obvious tendency to frustrate the intent of the parties to many settlement agreements, it at least had the benefit of being relatively clearto be effective, an assignment of rights with regard to a derivative claim must precede a release of the assignor (assignment → release = permissible; release → assignment = impermissible). *998 Conversely, the attempt of the majority to distinguish Cope II by identifying the central portion of its holding as dictaand its non-factual claim that this case involves a simultaneous exchange of a release and an assignment of claimswill leave practitioners and judges uncertain of Florida law. Cope II, despite all its shortcomings, should control the outcome of this case. The assignment, which occurred on August 1, 2001, did not precede Holman and Toomey's release of IMC, which had previously occurred on March 31, 2001. Therefore, Holman and Toomey did not receive any viable derivative causes of action against Wachovia.
For these reasons, I dissent with regard to issue I. However, because the majority has seen fit to address issues II and III, I will also express my position on these matters.

B. The Assignability of the Fiduciary-Duty Claim
I agree with the majority that, in Florida, the proper test for determining whether a given fiduciary-duty[7] claim is assignable or wholly personal involves a case-by-case inquiry with regard to the relationship and duties between the assignor-principal and the alleged tortfeasor-agent. See majority op. at 987-89. However, I disagree that the duty involved in this case is similar to that owed by an insurer to an insured in a bad-faith action, as this case does not involve an insurer. Rather, here, Wachovia indisputably acted as an insurance broker. See Toomey, 450 F.3d at 1227 ("Wachovia was the insurance broker for IMC." (emphasis supplied)); see also Essex Ins. Co. v. Zota, 985 So.2d 1036, 1046 (Fla.2008) ("[A]n insurance broker [generally] acts as an agent of the insured, not the insurer, where the broker is employed by the insured to procure insurance." (some emphasis supplied) (quoting 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 45:5 (3d ed.2007))). As we explained in Cope II:
The essence of a "bad faith" insurance suit (whether it is brought by the insured [i.e., first-party] or by the injured party standing in his place [i.e., third-party]), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)all of which results in the insured being exposed to an excess judgment.
462 So.2d at 460 (emphasis supplied) (quoting Kelly, 411 So.2d at 904). Hence, Wachovia, as an insurance broker, did not owe IMC a duty to defend with regard to the underlying litigation; rather, Wachovia owed IMC a duty to properly procure requested insurance coverage and to properly advise IMC concerning its coverage needs and potential risk exposure. See, *999 e.g., Romo v. Amedex Ins. Co., 930 So.2d 643, 654 (Fla. 3d DCA 2006) ("[W]here an insurance agent or broker undertakes to obtain insurance coverage for another person and fails to do so, he may be held liable for resulting damages to that person for breach of contract or negligence." (quoting Klonis v. Armstrong, 436 So.2d 213, 216 (Fla. 1st DCA 1983))), review denied, 949 So.2d 197 (Fla.2007); see generally 30 Fla. Jur.2d Insurance § 620 (2002).
In contrast to the majority, I would analyze the duty prong of our case-by-case assignability test by recognizing that the allegations falling under Holman and Toomey's assigned fiduciary-duty cause of action are akin to negligent-procurement claims, not bad-faith claims. For example, the majority states:
Holman and Toomey asserted that Wachovia had breached its duty to IMC by (1) failing to adequately explain to IMC that the Employment Practices Liability Insurance Policy covered claims alleging the breach of a written employment contract as well as defense costs for such claims; (2) failing to obtain proper approval from IMC to add the endorsement excluding coverage for breach of written employment contract claims to the Policy; (3) failing to advise IMC about the impact of the proposed Endorsement on IMC's risk exposure and existing employment relationships; (4) failing to ask IMC about the existence of any written employment contracts between IMC and any of its employees; (5) failing to ask IMC about existing or pending claims or litigation alleging the breach of a written employment contract; (6) failing to seek or offer replacement coverage or other alternatives by which IMC could preserve coverage for breach of written employment contract claims; (7) failing to explain to IMC that the proposed Endorsement would preserve defense costs for breach of written employment contract claims; (8) failing to protect IMC from reasonably anticipated liability; or (9) engaging in a conspiracy to eliminate IMC's insurance coverage for breach of written employment contract claims.
Majority op. at 988 n. 3. With the possible exception of claim (9), each of these claims relates to Wachovia's alleged negligent failure to obtain requested insurance coverage for the breach of written employment contracts. Further, such claims are assignable in Florida. See, e.g., Forgione v. Dennis Pirtle Agency, 701 So.2d 557, 560 (Fla.1997) ("[W]e conclude that public policy considerations do not preclude the assignment of an insured's claim for negligence against an insurance agent."), receded from on other grounds by Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So.2d 755, 757 (Fla.2005).
Accordingly, I would modify the majority's holding with regard to issue II as follows:
Because the insurance broker-insured relationship between IMC and Wachovia was not a confidential relationship, and because the [fiduciary-]duty claim against Wachovia was essentially a [negligent-procurement] claim, the cause of action ... is assignable by IMC to Holman and Toomey.
Majority op. at 989 (emphasis supplied). For this reason, I concur in the result only with regard to the majority's analysis of issue II.

C. Pleading Negligent Procurement and Breach of Fiduciary Duty in the Alternative
I fully concur with the majority with regard to its analysis of issue III, as Moss v. Appel, 718 So.2d 199, 201-02 (Fla. 4th DCA 1998), misstates Florida law:
[I]nsurance brokers will often have both a fiduciary duty to their insured-principals *1000 and a common-law duty to properly procure requested insurance coverage. As a result, negligence and breach of fiduciary duty [claims] can be pled in the alternative.
Majority op. at 990 (citations omitted).

III. CONCLUSION
I would answer the first certified question (i.e., issue I) by holding that the central aspect of our decision in Cope II was the prior-assignment requirement: to be effective, an assignment of rights with regard to an underlying derivative claim must precede a release of the assignor. In this case, the assignment occurred approximately four months after the release (August 1, 2001 versus March 31, 2001). Therefore, Cope II should control, and Holman and Toomey have not received any viable derivative causes of action from IMC. If the majority intends to recede from Cope II, I suggest that they should do so transparently to avoid confusing the courts and practitioners of Florida for the next decade. Further, if the intent of the contracting parties is to control in these situations, reformation principles (which Cope II and Kelly explicitly abjured) must apply to settlement agreements such as the one involved in this case. Nonetheless, as our precedent stands, the mechanistic prior-assignment rule of Cope II contravenes these general principles of contract law. Despite the admitted deficiencies of Cope II, stare decisis prohibits unilateral retreat from that decisionit is simply the law of Florida. Therefore, I dissent with regard to issue I.
However, since the majority does not view Cope II as dispositive or even applicable, I agree for the sake of this decision that IMC could assign its fiduciary-duty claim to Holman and Toomey because it is analogous to a negligent-procurement cause of action. For similar reasons, I agree that Holman and Toomey were entitled to plead a standard negligent-procurement claim in the alternative (although they would only be entitled to one recovery).
BELL, J., concurring in part and dissenting in part.
I agree with the majority that this Court's opinion in Fidelity & Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985), is distinguishable. I also agree that the negligence claim should have been submitted to the jury. However, I disagree with the majority's holding that the breach of fiduciary duty claim is assignable.
NOTES
[1] In Moss, the insureds brought suit against their insurance brokers, raising a breach of fiduciary duty claim and a negligence claim. Moss, 718 So.2d at 201. The jury found the insurance brokers not liable for negligence or breach of fiduciary duty. Id. at 200. However, the trial judge "granted a new trial on all issues, concluding that he had erred in not directing a verdict on the" existence of a fiduciary relationship between the insurance brokers and the insureds. Id. at 200. The Fourth District agreed that the trial court had erred in not directing a verdict on the issue of fiduciary relationship as it was "undisputed that Moss was acting as an insurance broker." Id. Thus, the Fourth District affirmed the trial court's decision to grant a new trial on the fiduciary duty claim. However, the Fourth District reversed the trial court's decision to grant a new trial on the negligence claim, reasoning as follows:

First, there was no error involving the negligence claim. Second, now that we know that there was a fiduciary relationship as a matter of law, there is no reason for a jury to consider the negligence claim. If the jury finds that the fiduciary duty was breached, there will be no reason for it to reach the negligence claim because the damages in this case would be the same. If the jury finds that the defendants did not breach a fiduciary duty, which is higher than the duty in a negligence case, it could not consistently find negligence. We therefore limit the new trial to breach of fiduciary duty.
Id. at 201-02.
[2] The relevant part of the agreement between Holman and Toomey and IMC reads as follows:

The Releasors, for so long as this Settlement Agreement and Release is not rescinded pursuant to Section 6 below, do hereby release, acquit and forever discharge the Releasees from and against any and all claims, demands, proceedings, actions, causes of action, damages, debts, sums of money, costs, attorneys' fees, obligations, contracts, agreements, and liabilities of whatsoever nature, whether known or unknown, suspected or unsuspected, both at law and in equity, and whether based on contract, tort, fraud, intentional act or violation of any securities or other law, having already resulted or to result at any time in the future; provided, however, that nothing contained herein shall operate to release or waive any claims the Releasors might have or herein acquire against the insurance companies specified in Sections 3(d) and (e) below, Wachovia Davis Baldwin, or any partner, shareholder, associate, employee, servant, agent or broker of Chubb/Federal Insurance Company or Wachovia Davis Baldwin for claims which arise out of the claims referenced in Sections 3(d)-(e) below, including, but not limited to, any claims which may be made directly or indirectly to satisfy the $1.8 million judgment awarded by the Court in the Litigation, and further provided that nothing contained herein shall operate to release any obligations of the parties to this Agreement arising under this Agreement.
[3] Holman and Toomey asserted that Wachovia had breached its duty to IMC by (1) failing to adequately explain to IMC that the Employment Practices Liability Insurance Policy covered claims alleging the breach of a written employment contract as well as defense costs for such claims; (2) failing to obtain proper approval from IMC to add the endorsement excluding coverage for breach of written employment contract claims to the Policy; (3) failing to advise IMC about the impact of the proposed Endorsement on IMC's risk exposure and existing employment relationships; (4) failing to ask IMC about the existence of any written employment contracts between IMC and any of its employees; (5) failing to ask IMC about existing or pending claims or litigation alleging the breach of a written employment contract; (6) failing to seek or offer replacement coverage or other alternatives by which IMC could preserve coverage for breach of written employment contract claims; (7) failing to explain to IMC that the proposed Endorsement would preserve defense costs for breach of written employment contract claims; (8) failing to protect IMC from reasonably anticipated liability; or (9) engaging in a conspiracy to eliminate IMC's insurance coverage for breach of written employment contract claims.
[4] The negligent failure to procure requested insurance coverage is a valid claim in Florida. See Romo v. Amedex Ins. Co., 930 So.2d 643, 654 (Fla. 3d DCA 2006); see also 5 Florida Torts § 150.24 (2007) (explaining that "[a]n agent may be liable to a customer, through breach of contract or negligence, for the failure to perform an agreement to procure insurance coverage" and that "[a]n agent or broker also has a duty of reasonable care in rendering advice on insurance matters").
[5] The Eleventh Circuit noted that it could not decide this issue without the answers to the certified questions. Toomey, 450 F.3d at 1227 n. 1.
[6] Paragraph 2(h) of the settlement agreement states that "the Releases provided above shall be effective immediately [i.e., effective on March 30, 2001]." (Emphasis supplied.)
[7] Black's Law Dictionary defines "fiduciary relationship" as follows:

A relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship. Fiduciary relationshipssuch as ... principal-agent... require an unusually high degree of care. Fiduciary relationships usu[ally] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.
Black's Law Dictionary 1315 (8th ed.2004) (emphasis supplied); see also Randolph v. Mitchell, 677 So.2d 976, 978 (Fla. 5th DCA 1996) (stating that an insurance broker owes a fiduciary duty to the insured-principal).