[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2010
JOHN LEY
CLERK

No. 09-11718

D. C. Docket No. 08-80254-CV-DTKH

TIARA CONDOMINIUM ASSOCIATION, INC.,
a Florida non-profit corporation,
in its own name and as agent for all owners
of record of all individual condominium
parcels with the Tiara Condominium,

Plaintiff-Appellant,

versus

MARSH & MCLENNAN COMPANIES, INC.,
a Delaware Corporation,
MARSH, INC.,
MARSH, USA, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(May 27, 2010)

Before DUBINA, Chief Judge, KRAVITCH, Circuit Judge, and EDENFIELD,[*] District Judge.

DUBINA, Chief Judge:

This appeal arises from a contract between an insurance broker and the association responsible for managing a condominium tower located on Singer Island, Florida. The tower suffered extensive wind damage from two hurricanes in September 2004. The condominium association claims that the broker caused part of its losses by failing to procure an adequate insurance policy for the condominium. Although we are able to resolve the issues raised with respect to the association's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation, resolution of its claims for negligence and breach of fiduciary duty requires certification to the Florida Supreme Court of a question regarding Florida's application of the economic loss rule.

## I.  BACKGROUND

Tiara Condominium Association ("Tiara") manages the Tiara condominium tower, located in Palm Beach County, Florida. In 2002, Tiara retained Marsh &

[*]Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

McLennan Companies ("Marsh") as its insurance broker and tasked it with procuring insurance coverage for the condominium building. As a result, in 2004, Tiara entered into an insurance agreement with Citizens Property Insurance Corporation ("Citizens"). The policy with Citizens ("Citizens policy") contained a loss limit of nearly $50 million.

In September 2004, hurricanes Frances and Jeanne struck southeastern Florida, each causing extensive damage to the condominium tower. Tiara began its remediation efforts, but as costs approached the policy limit, Tiara contacted Marsh for assurances that the policy contained a per-occurrence limit rather than an aggregate limit on its coverage. If the policy were written as a per-occurrence policy, the policy limit would "reset" with each occurrence—in this case, each hurricane—during the policy period, making the total relief available approximately $100 million in this case. Otherwise, as an aggregate policy, the total available relief would be equal to the policy limit of nearly $50 million.

Marsh advised Tiara of its opinion that the insurance coverage provided by the Citizens policy was per-occurrence, and therefore coverage reset with each loss. Based on Marsh's assurances, Tiara continued its remediation efforts, abandoning the ineffective drying approach in favor of reconstruction, and spent more than $100 million in the process. When Tiara sought payment from Citizens,

3

however, Citizens asserted its position that the insurance policy contained an aggregate limit of insurance, not a per-occurrence limit. Tiara sued Citizens to recover the balance of its damages, and eventually settled with Citizens for about $89 million. No determination was made on whether the policy established a per-occurrence or aggregate limit.

Tiara now contends that its insufficient settlement with Citizens was due primarily to Marsh's failure to procure appropriate insurance coverage on its behalf. In October 2007, Tiara filed this suit against Marsh for (1) breach of contract, (2) negligent misrepresentation, (3) breach of the implied covenant of good faith and fair dealing, (4) negligence, and (5) breach of fiduciary duty. After discovery, the district court granted summary judgment in favor of Marsh on all claims. Tiara appeals the district court's order.

## II. STANDARD OF REVIEW

This court reviews *de novo* a district court order granting summary judgment. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 871 (11th Cir. 2009). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)) Summary judgment should be granted when there

4

is "a complete failure of proof concerning an essential element of the nonmoving party's case." *Id*. at 322–23, 106 S. Ct. at 2552.

## III.  DISCUSSION

### A.  Breach of Contract Claims

Tiara asserts two categories of breach of contract claims.  First, Tiara claims that Marsh breached their agreement by failing to procure per-occurrence insurance coverage.  Second, it claims that Marsh breached an oral agreement to take exclusive responsibility for ensuring the adequacy of Tiara's coverage.  Specifically, Tiara claims that Marsh breached the agreement by, among other things, failing to advise Tiara that it was under-insured because its two-year-old appraisal was outdated.

The first portion of Tiara's breach of contract claims turns on whether the Citizens policy provided aggregate or per-occurrence coverage.  In arguing that the policy is for aggregate coverage, Tiara primarily relies on dicta from an earlier Florida appellate case that indicates that an insurance policy is presumed to provide aggregate coverage unless it expressly provides otherwise.  *See Palilla v. St. Paul Fire & Marine Ins. Co.*, 322 So. 2d 46, 48 (Fla. Dist. Ct. App. 1975) ("The law is clear that in the absence of [a clause indicating that loss does not reduce the amount of the policy] the insurer is held liable at most . . . for only the

difference between the amount paid on the first loss and the amount named on the policy as its coverage."). Tiara contends that *Palilla* conclusively establishes that the insurance policy at issue here provided aggregate coverage because the Citizens policy contains no statement to the contrary.

We disagree with the weight Tiara claims should be assigned to the dicta it cites from *Palilla*. Here, there are two explicit references to per-occurrence coverage in the Citizens policy. In the "Conditions" section, the policy reads: "[Citizens] shall not be liable in any one loss . . . [f]or more than the applicable Limit of Liability." [R. 146-2 at 13.] The policy's deductible provision similarly notes that Citizens "will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations." [*Id.* at 21.] Even if we declined to read the provisions as establishing per-occurrence coverage, the provisions at least render the contract ambiguous with respect to aggregate versus per-occurrence coverage. Thus, the court is left with an ambiguous contract that, under established rules of construction, should be "construed in favor of the insured and against the insurer who drafted the policy." *See First Specialty Ins. Co. v. Caliber One Indem. Co.*, 988 So. 2d 708, 712 (Fla. Dist. Ct. App. 2008). This maxim holds true even where the insurance policy was procured by an insurance broker. *See Cast Steel Prods., Inc. v. Admiral Ins. Co.*,

6

348 F.3d 1298, 1300 n.1, 1304 (11th Cir. 2003). Therefore, the district court correctly construed the Citizens policy as providing per-occurrence coverage. Accordingly, we affirm the district court's grant of summary judgment on the first category of contract claims.

The district court was also correct in rejecting the remaining breach of contract claims based on the inadequate evidence regarding the scope of the oral agreement. Under Florida law, a claim for breach of an oral contract arises only when the parties "mutually assented to a certain and definite proposition and left no essential terms open." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. Dist. Ct. App. 2000) (internal quotation marks omitted). The parties in this case essentially agree on the governing law, but dispute what the facts indicate about the scope of Marsh's contractual duties. Tiara contends that the contents of an engagement letter, internal communications among Marsh staff, notices that Marsh sent to third parties concerning Tiara's insurance coverage, and expert reports show that Marsh's contractual duties made it responsible for ensuring that Tiara was adequately insured. Marsh contends that none of the evidence indicates that Tiara ceded ultimate responsibility for its insurance decisions to Marsh.

We agree with Marsh that there are no contractual provisions in the oral agreement that extended Marsh's responsibility beyond that which was stated in the written agreement. Therefore, we affirm the district court's grant of summary judgment in favor of Marsh on Tiara's breach of contract claims.

## B. Negligent Misrepresentation

Tiara next alleges that the district court erred in granting summary judgment on its claim for negligent misrepresentation. Tiara contends that Marsh negligently misrepresented to Tiara the nature of the Citizens policy both when it purchased the policy and when it inquired about the available insurance during its remediation and restoration of the tower. According to Tiara, Marsh misidentified the policy as having a per-occurrence limit, when in reality the policy contained an aggregate limit.

Under Florida law, a claim of negligent representation requires showing four elements:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. Dist. Ct. App. 1993). Tiara's negligent misrepresentation claim turns on whether Marsh's description of the Citizens policy as per-occurrence was accurate. As discussed above, Marsh correctly interpreted the policy as containing a per-occurrence limit of liability. As a result, Tiara's negligent misrepresentation claim fails on the first element of the tort because no fact was misrepresented.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Tiara alleges that Marsh's failure to procure appropriate insurance coverage amounts to a breach of its implied covenant of good faith and fair dealing. Under Florida law, a party breaches this implied covenant by "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000). Because Tiara has not offered evidence that any of the alleged errors made by Marsh were intentional or made in bad faith, we affirm summary judgment on Tiara's breach of implied covenant and fair dealing claim.

**D. Claims for Negligence and Breach of Fiduciary Duty**

9

Tiara contends that Marsh was negligent in failing to procure for it an insurance policy providing appropriate coverage and that Marsh's actions fell short of performing its duties as insurance broker and fiduciary. Specifically, Tiara cites several "collateral failures" such as Marsh's failure to advise Tiara of its belief that it was under-insured and properly advise it regarding its complete insurance needs. To the extent that Tiara's claims for negligence or breach of fiduciary duty rest on Tiara's incorrect interpretation of the Citizens policy as per-occurrence, the district court's grant of summary judgment on these claims was appropriate; however, to the extent that Tiara's claims are based on collateral failures, we find that Florida law is not sufficiently clear on whether such claims are barred as extra-contractual under the economic loss rule.

Florida law provides that insurance agents and insurance brokers have some extra-contractual duties. *See Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 990 n.4 (Fla. 2008) (noting that "negligent failure to procure requested insurance coverage is a valid claim in Florida" and that agents and brokers who give advice have a duty to exercise reasonable care in so doing); *Bennett v. Berk*, 400 So. 2d 484, 485 (Fla. Dist. Ct. App. 1981) ("An insurance broker may be liable for damages where there is an agreement to procure insurance and a negligent failure to do so."); *Sheridan v. Greenberg*, 391 So. 2d 234, 236 (Fla.

10

Dist. Ct. App. 1980) (holding that an insurance agent must "exercise the reasonable skill and care to obtain the appropriate coverage"). In *Toomey*, the Florida Supreme Court expressly approved of negligence actions against an insurance broker and noted that a brokerage firm owes a fiduciary duty to its insured. 994 So. 2d at 988, 990.

Florida also recognizes the economic loss rule as a bar to recovery in tort for economic damages that arise in contract. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id*. An exception to the economic loss rule applies where the contract at issue relates to the provision of professional services because "public policy dictates that liability not be limited to the terms of the contract." *Id.* at 537.

It is, however, not clear whether an insurance broker provides professional services under Florida law. In *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999), the Florida Supreme Court considered whether an engineer was a professional, and thus unable to take advantage of the economic loss rule. The court cited its decisions that defined "profession" in applying the statute of limitations for malpractice actions and concluded that an engineer was a

11

professional under the law because the state requires at least a four-year college degree before licensing. *Id*. at 976. By contrast, an insurance agent is generally not considered a professional under Florida law. *Pierce v. AALL Ins. Inc.*, 531 So. 2d 84, 88 (Fla. 1988); *but see Randolph v. Mitchell*, 677 So. 2d 976, 978 (Fla. Dist. Ct. App. 1996) (holding that economic loss rule did not bar claim against insurance agent because "[h]is obligation was extracontractual and he should be liable for any malpractice, negligent or intentional" and suggesting that an insurance agent is a professional). Florida courts, however, have rarely discussed the economic loss rule when evaluating claims against insurance agents and brokers. *See, e.g.*, *Toomey*, 994 So. 2d 980 (permitting negligence and breach of fiduciary duty claims against insurance broker without considering the economic loss rule).

We conclude that the question of whether the economic loss rule bars tort claims brought against insurance brokers is unsettled under Florida law and should be certified to the Supreme Court of Florida. *MCI WorldCom Network Servs. v. Mastec, Inc.*, 370 F.3d 1074, 1078 (11th Cir. 2004) ("This court may certify questions of state law to the state's highest court."). Florida law provides that the Supreme Court of Florida may answer questions of state law, certified by this court, that are "determinative" of the appeal when "there are no clear controlling

12

precedents in the decisions of the Supreme Court of [Florida]." Fla. Stat. Ann. § 25.031(West 2009); *see also* Fla. R. App. P. 9.150(a).

## IV. QUESTION CERTIFIED

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

DOES AN INSURANCE BROKER PROVIDE A "PROFESSIONAL SERVICE" SUCH THAT THE INSURANCE BROKER IS UNABLE TO SUCCESSFULLY ASSERT THE ECONOMIC LOSS RULE AS A BAR TO TORT CLAIMS SEEKING ECONOMIC DAMAGES THAT ARISE FROM THE CONTRACTUAL RELATIONSHIP BETWEEN THE INSURANCE BROKER AND THE INSURED?

In certifying this question, we do not intend to restrict the issues considered by the Supreme Court of Florida. *See Miller v. Scottsdale Ins. Co.*, 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida."). We note that the Supreme Court of Florida retains the discretion to restate the issue and to answer the question in the manner it chooses. *See Stevens*

13

*v. Battelle Mem'l Inst.*, 488 F.3d 896, 904 (11th Cir. 2007). To assist the Supreme Court of Florida in considering this issue, we transmit to the court the entire record in this case along with the briefs of the parties.

## V. CONCLUSION

After reviewing Florida case law, we are uncertain whether the economic loss rule forecloses Tiara's claims for negligence and breach of fiduciary duty under Florida law. Because the question presents an issue of state law that should be decided by the state's highest court, we certify the question to the Supreme Court of Florida. We do, however, affirm the district court's grant of summary judgment in favor of Marsh on Tiara's claims for breach of contract, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing.

**AFFIRMED in part and QUESTION CERTIFIED.**