DUBINA, Chief Judge:
As we stated in our earlier opinion reported at Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc., 607 F.3d 742 (11th Cir.2010), this appeal arises from a contract between an insurance broker and the association responsible for managing the condominium tower located on Singer Island, Florida. The tower suffered extensive wind damage from two hurricanes in September 2004. The condominium association claimed that the broker caused part of its losses by failing to procure an adequate insurance policy for the condominium. In our earlier opinion, we were able to resolve the issues raised on appeal with respect to the association’s claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. We affirmed the district court’s grant of summary judgment on all of those claims. Concerning the claims for negligence and breach of fiduciary duty, because we concluded that Florida law was unclear, we certified the following question to the Supreme Court of Florida concerning Florida’s application of the economic loss rule:
CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:
DOES AN INSURANCE BROKER PROVIDE A “PROFESSIONAL SERVICE” SUCH THAT THE INSURANCE BROKER IS UNABLE TO SUCCESSFULLY ASSERT THE ECONOMIC LOSS RULE AS A BAR TO TORT CLAIMS SEEKING ECONOMIC DAMAGES THAT ARISE FROM THE CONTRACTUAL RELATIONSHIP BETWEEN THE INSURANCE BROKER AND THE INSURED?
In certifying our question, we noted that the Supreme Court of Florida retains the discretion to restate the issue and to answer the question in the manner it chooses. See Stevens v. Battelle Mem’l Inst., 488 F.3d 896, 904 (11th Cir.2007). The Supreme Court of Florida did precisely that. It restated the certified question as follows:
DOES THE ECONOMIC LOSS RULE BAR AN INSURED’S SUIT AGAINST AN INSURANCE BROKER WHERE THE PARTIES ARE IN CONTRACTUAL PRIVITY WITH ONE ANOTHER AND THE DAMAGES SOUGHT ARE SOLELY FOR ECONOMIC LOSSES?
The Supreme Court of Florida answered its question in the negative and held that the application of the economic loss rule was limited to products liability cases. Accordingly, based on the opinion the Supreme Court of Florida filed with the Eleventh Circuit Court of Appeals on March 11, 2013, and attached hereto as “Appendix I,” we vacate the district court’s grant of summary judgment in favor of Marsh on Tiara’s claims for negligence and breach of fiduciary duty and remand those claims for the district court to reconsider *1255 them in light of the Supreme Court of Florida’s opinion.
VACATED and REMANDED.
APPENDIX I
Supreme Court of Florida
No. SC10-1022
TIARA CONDOMINIUM ASSOCIATION, INC., etc., Appellant, vs. MARSH & MCLENNAN COMPANIES, INC., etc., et al., Appellees.
[March 7, 2013]
LABARGA, J.
This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. In Tiara Condominium Ass’n, Inc. v. Marsh & McLennan Co., Inc., 607 F.3d 742, 749 (11th Cir.2010), the Eleventh Circuit certified the following question to this Court:
DOES AN INSURANCE BROKER PROVIDE A “PROFESSIONAL SERVICE” SUCH THAT THE INSURANCE BROKER IS UNABLE TO SUCCESSFULLY ASSERT THE ECONOMIC LOSS RULE AS A BAR TO TORT CLAIMS SEEKING ECONOMIC DAMAGES THAT ARISE FROM THE CONTRACTUAL RELATIONSHIP BETWEEN THE INSURANCE BROKER AND THE INSURED?
Because the question as certified by the Eleventh Circuit is premised on the continued applicability of the economic loss rule in cases involving contractual privity, we restate the certified question as follows:
DOES THE ECONOMIC LOSS RULE BAR AN INSURED’S SUIT AGAINST AN INSURANCE BROKER WHERE THE PARTIES ARE IN CONTRACTUAL PRIVITY WITH ONE ANOTHER AND THE DAMAGES SOUGHT ARE SOLELY FOR ECONOMIC LOSSES?
We answer this question in the negative and hold that the application of the economic loss rule is limited to products liability cases. Therefore, we recede from prior case law to the extent that it is inconsistent with this holding. We begin by discussing the facts and procedural background of this case. We then turn to our analysis.
FACTS AND PROCEDURAL BACKGROUND
The facts of this case are set forth in the Eleventh Circuit Court of Appeals’ opinion in Tiara Condominium Ass’n, Inc. v. Marsh & McLennan Co., Inc., 607 F.3d 742 (11th Cir.2010). We summarize the facts here. Tiara Condominium Association (Tiara) retained Marsh & McLen-nan (Marsh) as its insurance broker. One of Marsh’s responsibilities was to secure condominium insurance coverage. Marsh secured windstorm coverage through Citizens Property Insurance Corporation (Citizens), which issued a policy that contained a loss limit in an amount close to $50 million. In September 2004, Tiara’s condominium sustained significant damage caused by hurricanes Frances and Jeanne. Tiara began the process of loss remediation. After being assured by Marsh that the loss limits coverage was per occurrence (meaning that Tiara would be entitled to almost $100 million rather than coverage in the aggregate, which would be half of that amount), Tiara proceeded with more expensive remediation efforts. *1256 However, when Tiara sought payment from Citizens, Citizens claimed that the loss limit was $50 million in the aggregate, not per occurrence. Eventually, Tiara and Citizens settled for approximately $89 million, but that amount was less than the more than $100 million spent by Tiara.
In October 2007, Tiara filed suit against Marsh, alleging (1) breach of contract, (2) negligent misrepresentation, (3) breach of the implied covenant of good faith and fair dealing, (4) negligence, and (5) breach of fiduciary duty. The trial court granted summary judgment in favor of Marsh on all claims and Tiara appealed to the Eleventh Circuit. The appeals court concluded that summary judgment was proper as to the breach of contract, negligent misrepresentation, and breach of implied covenant of good faith and fair dealing claims.[1] However, the appeals court did not affirm the summary judgment granted by the trial court on the negligence and breach of fiduciary duty claims, which were based on Tiara’s allegations that Marsh was either negligent or breached its fiduciary duty by failing to advise Tiara of its complete insurance needs and by failing to advise Tiara of its belief that Tiara was underin-sured. As to these two claims, the appeals court certified a question to this Court to determine whether the economic loss rule prohibits recovery, or whether an insurance broker falls within the professional services exception that would allow Tiara to proceed with the claims. We turn now to a discussion of the economic loss rule.
ANALYSIS
Origin and Development of the Economic Loss Rule
“The exact origin of the economic loss rule is subject to some debate and its application and parameters are somewhat ill-defined.” Moransais v. Heathman, 744 So.2d 973, 979 (Fla.1999). In its simplest form, we noted, the rule appeared initially in both state and federal courts in products liability type cases. Id. at 979. A historical review of the doctrine reveals that it was introduced to address attempts to apply tort remedies to traditional contract law damages. In Casa Clara Condominium Ass’n, Inc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993), we recognized the economic loss rule as “the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.” Id. at 1246 (quoting Sidney R. Barrett, Jr., Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C.L.Rev. 891, 894 (1989)). We have defined economic loss as “damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.” Casa Clara, 620 So.2d at 1246 (quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L.Rev. 917, 918 (1966)). We further explained that economic loss
includes “the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.” Comment, Manufacturers’ Liability to Remote Purchasers for “Economic Loss” Damages—Tort or Contract?, 114 U. Pa. L.Rev. 539, 541 (1966). In other words, economic losses are “disappointed economic expeeta- *1257 tions,” which are protected by contract law, rather than tort law. Sensenbrenner v. Rust, Orling & Neale Architects, Inc., 236 Va. 419, 374 S.E.2d 55, 58 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 745 P.2d 1284 (1987).
Casa Clara, 620 So.2d at 1246.
Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses. Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So.2d 532, 536 (Fla.2004). The rule has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context.
Despite its underpinnings in the products liability context, the economic loss rule has also been applied to circumstances when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract.
Contractual Privity Economic Loss Rule
“The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort.” Am. Aviation, 891 So.2d at 536 (citing Ginsberg v. Lennar Fla. Holdings, Inc., 645 So.2d 490, 494 (Fla. 3d DCA 1994) (“Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.”). When the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could. have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. Am. Aviation, 891 So.2d at 536-37); Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 103 (Fla. 4th DCA 1969) (“[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract.”).
The contractual privity application of the economic loss rule is best exemplified by our decision in AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180 (Fla.1987).[2] There, AFM entered into an agreement with Southern Bell that included placing AFM’s advertising in the yellow pages. See id. at 180. However, Southern Bell listed an incorrect phone number for AFM, causing AFM economic damages. See id. In asserting a claim for economic losses, AFM chose to proceed solely on a negligence theory in the trial court below rather than base its theory of recovery on any agreement between the parties. See id. at 181.. In determining that AFM could not recover economic losses based on a tort theory, this Court noted that AFM’s contract with Southern Bell “defined the limitation of liability through bargaining, risk acceptance,, and compensation.” Id. ' Because AFM had not proved that Southern Bell committed a tort independent of the breach of contract, this Court concluded that AFM had no basis for recovery in negligence. See id.
Subsequently, in American Aviation, we recognized that despite the general prohibition against a recovery in tort for eco *1258 nomic damages for parties in privity of contract, we have allowed it in torts committed independently of the contract breach, such as fraud in the inducement. See 891 So.2d at 537. For example, in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996), we stated:
The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.
Am. Aviation, 891 So.2d at 537 (quoting HTP, Ltd., 685 So.2d at 1239 (citations omitted)). See also PK Ventures, Inc. v. Raymond James & Assocs., 690 So.2d 1296 (Fla.1997) (economic loss rule did not preclude a cause of action by the buyer of commercial property against the seller’s broker for negligent misrepresentation).[3]
Another situation in which this Court has determined that public policy dictates that liability not be limited to the terms of the contract involves cases such as those alleging neglect in providing professional services. See, e.g., Moransais, 744 So.2d at 983 (“While provisions of a contract may impact a legal dispute, including an action for. professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice.”).
Products Liability Economic Loss Rule
Although the economic loss rule has, over time, been extended to the contractual privity context, the roots of the rule may be found in the products liability context. The products liability economic loss rule developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law. Am. Aviation, 891 So.2d at 537-38. As the theory of strict liability replaced the theory of implied warranties with regard to actions based on defective products that resulted in personal injury, the issue arose as to whether the courts should permit a cause of action in tort by one who suffered purely economic loss due tó' a defective product. Id. at 539. For those who were in contractual privity, actions based on breach of warranty continued as the viable method if the only damages were economic in nature. Id. But for those who were not in contractual privity and who sustained economic losses as a result of defective products, the question became what theory of recovery would be proper. Id.
The development of Florida’s products liability economic loss rule can be traced to two cases: Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 149 (1965), and East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In Seely, the California Supreme Court held that the doctrine of strict liability in tort had not supplanted causes of action for breach of express warranty. The court was confronted with a situation in which a plaintiff sought recovery for economic loss resulting from his purchase of a truck that *1259 failed to perform according to expectations. See id., 45 Cal.Rptr. 17, 403 P.2d at 149. The California Supreme Court agreed with the trial court that the defendant could recover the money he paid on the purchase price of the truck and for his lost profits on the basis of breach of express warranty, see id., 45 Cal.Rptr. 17, 403 P.2d at 148, but rejected the argument that warranty law had been superseded by the doctrine of strict liability. See id., 45 Cal.Rptr. 17, 403 P.2d at 149. The court concluded that the strict liability doctrine was not intended to undermine the warranty provisions of sales or contract law, but was designed to govern the wholly separate and distinct problem of physical injuries caused by defective products. See id., 45 Cal.Rptr. 17, 403 P.2d at 149-50.
The California Supreme Court recognized that the rules of warranty continued to function well in a commercial setting, allowing the manufacturer to determine the quality of the product and the scope of its liability if the product failéd to perform. The court reasoned that a manufacturer’s liability under that theory would extend to all subsequent purchasers regardless of whether the manufacturer’s promise regarding the fitness of the product was ever communicated to those purchasers. If the manufacturer were strictly liable for economic losses resulting from the failure of its product to perform as promised by the warranty, it would be liable not only to the initial purchaser, but to every consumer who subsequently obtained possession of the product. See id., 45 Cal.Rptr. 17, 403 P.2d at 150.
In East River, the United States Supreme Court adopted the reasoning in Seely when it considered the issue of economic loss resulting from defective products in the context of admiralty. According to the Supreme Court, when the damage is to the product itself, “the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain.” Id. East River, 476 U.S. at 868, 106 S.Ct. 2295 (emphasis supplied). The Court stated:
Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product.
Id. at 872-73, 106 S.Ct. 2295 (emphasis .supplied) (footnote and citation omitted). Recognizing that extending strict products liability to cover economic damage would result in “contract law ... drown[ing] in a sea of tort,” id. at 866, 106 S.Ct. 2295, the Supreme Court held that “a manufacturer in a commercial relationship has no duty under either a negligence or strict prod-uets-liability theory to prevent a product from injuring itself.” Id. at 871, 106 S.Ct. 2295. Thus, from the outset, the focus of the economic loss rule was directed to damages resulting from defects in the product itself.
Relying on the reasoning in Seely and East River, this Court adopted the products liability economic loss rule, precluding recovery of economic damages in tort where there is no property damage or personal injury, in Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla.1987), our seminal case on the applicability of the economic loss rule. Florida Power & Light (FPL) entered into contracts with Westinghouse in which Westinghouse agreed to design, manufacture, and furnish two nuclear steam supply systems, including six steam generators. *1260 FPL discovered leaks in all six generators. FPL brought suit, alleging that Westinghouse was liable for breach of express warranties in the contracts and for negligence, and sought damages for the cost of repair, revision, and inspection of the steam generators. Id. at 900.
In determining whether Florida law permitted FPL to recover the economic losses in tort without a claim for personal injury or separate property damage, this Court considered the policy issues supporting the application of a rule that limits tort recovery for economic losses when a product damages itself. Id. Concluding that warranty law was more appropriate than tort law for resolving economic losses in this context, the Court adopted the holding in East River that “a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself.” Florida Power, 510 So.2d at 901 (quoting East River, 476 U.S. at 871, 106 S.Ct. 2295). Thus, as we reaffirmed in American Aviation:
The economic loss rule adopted in Florida Power represents this Court’s pronouncement that, notwithstanding the theory of strict liability adopted in West,[4] strict liability has not replaced warranty law as the remedy for frustrated economic expectations in the sale of goods. In exchange for eliminating the privity requirements of warranty law and expanding the tort liability for manufacturers of defective products which cause personal injury, we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself.
Am. Aviation, 891 So.2d at 541. We also noted that “the products liability economic loss rule articulated in Seely and East River, and adopted by this Court in Florida Power, applies even in the absence of privity of contract.” Id. (citing Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628, 631 (Fla.1995) (holding cause of action for negligence against manufacturer of defective buses was barred by the economic loss rule notwithstanding absence of privity)), see also Casa Clara, 620 So.2d at 1248 (holding cause of action against manufacturer of defective concrete was barred by the economic loss rule notwithstanding absence of privity).
Simply stated, “[t]he essence of the early holdings discussing the rule is to prohibit a party from suing in tort for purely economic losses to a product or object provided to another for consideration, the rationale being that in those cases ‘contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage.’ ” Moransais, 744 So.2d at 980 (citing Florida Power, 510 So.2d at 902). Such was the reasoning in East River, Seely, and ultimately, Florida Power.
An examination of the application of the economic loss rule in Florida from its inception to our ruling in Florida Power, reveals that this Court adhered strictly to the reasoning of East River and Seely. Subsequent to our ruling in Florida Power, however, we issued a number of rulings which, as aptly stated in Moransais, “appeared to expand the application of the rule beyond its principled origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent.” Moransais, *1261 744 So.2d at 980. For example, in AFM, as previously discussed, we extended the economic loss rule to preclude a negligence claim arising from breach of a service contract in a nonprofessional service context. See AFM, 515 So.2d at 181. We also noted in Moransais, that “[w]hile we continue to believe the outcome of [AFM] is sound, we may have been unnecessarily over-expansive in our reliance on the economic loss rule as opposed to fundamental contractual principles.” Moransais, 744 So.2d at 981.
In Casa Clara, we held that the economic loss rule barred a cause of action in tort for providing defective concrete where there was no personal injury or damage to property other than to the product itself.[5] Casa Clara, 620 So.2d at 1248. In Airport RenL-A-Car, we followed the reasoning in Casa Clara in holding the economic loss rule barred a cause of action for negligence against the manufacturer of defective buses where the only damage alleged was to the buses themselves. Airport Rent-A-Car, 660 So.2d at 630-81.
In American Aviation, in recognizing our history of unprincipled extension of the rule, we concluded that the economic loss rule should be expressly limited to the original rationale and intent of Seely, East River, and Florida Power, and held that a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself. Am. Aviation, 891 So.2d at 542. “In other words, we reaffirm our recognition of the products liability economic loss rule.” Id. at 543. Despite this recognition, we expressly noted that the “other property” exception to the products liability economic loss rule remained viable. Id. In addition to the “other property” exception, we also reaffirmed that in cases involving either privity of contract or products liability, the other exceptions to the economic loss rule that we have developed, such as for professional malpractice,[6] fraudulent inducement,[7] and negligent misrepresentation,[8] or free-standing statutory causes of action still apply.[9] Am. Aviation, 891 So.2d at 543. We expressly emphasized, “[t]hese exceptions remain untouched by our ruling today.” See id.
Thus, despite our effort to roll back the economic loss rule to its products liability roots, we left untouched a number of exceptions which continue to extend the application of the rule beyond our original limited intent.
A Legacy of Unprincipled Expansion
For some time, as reflected by the foregoing discussion, this Court has been concerned with what it perceived as an over-expansion of the. economic loss rule. We began expressing this concern in Moran-sais, where we noted our refusal to extend its application to actions based on fraudulent inducement and negligent representa *1262 tion cases. Id. at 981 (citing PK Ventures (negligent misrepresentation); HTP (fraudulent inducement)). We observed,
the [economic loss] rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of actions in tort, such as professional malpractice.
Moransais, 744 So.2d at 983 (footnote omitted). Five years later, in American Aviation, we reaffirmed our concern with the over-expansion of the rule and again noted that the economic loss rule should be expressly limited. We emphasized this concern with the following statement:
Several justices on this Court have supported expressly limiting the economic loss rule to its principled origins. In Moransais, Justice Wells stated “directly that it is [his] view that the economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product.” Moransais, 744 So.2d at 984 (Wells, J., concurring). Two justices subsequently joined Justice Wells when he reiterated this position in Comptech International, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219 (Fla.1999). See id. at 1227 (Wells, J., concurring with an opinion in which Justices Lewis and Pariente joined).
Am. Aviation, 891 So.2d at 542. Thus, in Moransais, Comptech, and American Aviation, this Court clearly expressed its desire to return the economic loss rule to its intended purpose—to limit actions in the products liability context. In each instance, however, we left intact a number of exceptions that continue the rule’s unprincipled expansion. We simply did not go far enough.
Having reviewed the origin and original purpose of the economic loss rule, and what has been described as the unprincipled extension of the rule, we now take this final step and hold that the economic loss rule applies only in the products liability context. We thus recede from our prior rulings to the extent that they have applied the economic loss rule to cases other than products liability. The Court will depart from precedent as it does here “when such departure is ‘necessary to vindicate other principles of law or to remedy continued injustice.’ ” Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005) (quoting Haag v. State, 591 So.2d 614, 618 (Fla.1992)). Stare decisis will also yield when an established rule has proven unacceptable or unworkable in practice. See Westgate Miami Beach, Ltd. v. Newport Operating Corp., 55 So.3d 567, 574 (Fla.2010). Our experience with the economic loss rule over time, which led to the creation of the exceptions to the rule, now demonstrates that expansion of the rule beyond its origins was unwise and unworkable in practice. Thus, today we return the economic loss rule to its origin in products liability.
CONCLUSION
Because we now limit the application of the economic loss rule to cases involving products liability, it is not necessary for us to decide whether the economic loss rule exception for professionals applies to insurance brokers. Based on the foregoing, we answer the rephrased certified question in the negative and hold that the application of the economic loss rule is limited to products liability cases. Having answered *1263 the rephrased certified question, we return this case to the Eleventh Circuit Court of Appeals.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS and LABARGA, JJ., concur.
POLSTON, C.J., dissents with an opinion, in which CÁNADY, J., concurs.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

. The Eleventh Circuit concluded that Marsh correctly interpreted the policy as containing a per-occurrence limit of liability. See Tiara, 607 F.3d at 747.

. We later receded from AFM to the extent that it was unnecessarily expansive in its reliance on the economic loss rule as opposed to fundamental contractual principles. See American Aviation, 891 So.2d at 542.

. In Moransais, in describing our refusal to apply our past liberal application of the economic loss rule in PK Ventures and HTP, Ltd., we made the following observation: "More recently this Court has recognized the danger in an unprincipled extension of the rule, and we have declined to extend the economic loss rule to actions based on fraudulent inducement and negligent misrepresentation." 744 So.2d at 981.

. In West v. Caterpillar Tractor Co., 336 So.2d 80, 92 (Fla.1976), we adopted the theory of strict products liability in Florida.

.Our opinion, however, was not unanimous, especially as to our characterization of "other property.” We stated that tort law was designed to protect the interest of society as a whole by imposing a duty of reasonable care to prevent property damage or physical harm to others, whereas contract law operates to protect the economic expectations of the contracting parties when a "product” is the object of the contract. Casa Clara, 620 So.2d at 1246.

. See Moransais, 744 So.2d at 983.

. See HTP, Ltd., 685 So.2d at 1239.

. See PK Ventures, 690 So.2d at 1297.

. See Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219, 1221 (Fla.1999).