[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13242

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-01688-CV-T-26-TGW

RICHARD L. TOOMEY,
Resident of Montgomery County, As an
individual and as an assignee of IMC Mortgage
Company,
BRIAN D. HOLMAN,
Resident of Baltimore County, As an
individual and as an assignee of IMC Mortgage
Company,

Plaintiffs-Appellees
Cross-Appellants,

versus

WACHOVIA INSURANCE SERVICES, INC.,
JOEL G. WILLIAMS,
DAVID BALDWIN, INC.,
A Division of Wachovia Insurance Services, Inc.,

Defendants-Appellants
Cross-Appellees.

Appeal from the United States District Court
for the Middle District of Florida
_____

**(May 30, 2006)**

Before TJOFLAT, BARKETT, and GOODWIN[*], Circuit Judges.

PER CURIAM.

In this diversity action, Wachovia Insurance Services, Inc., Davis Baldwin, Inc., a division of Wachovia Insurance Services, Inc., and Joel Williams, an officer/employee of Wachovia Insurance Services, Inc. (together "Wachovia"), appeal the $1,069,200 jury verdict in favor of Brian Holman and Richard Toomey for breach of a fiduciary duty owed by Wachovia to IMC Mortgage Company ("IMC"). In a previous settlement agreement between IMC and Holman and Toomey, IMC assigned its right to sue Wachovia and to receive damages to Holman and Toomey.

Holman and Toomey cross-appeal,[1] arguing that the district court erred in granting judgment as a matter of law to Wachovia and dismissing their claims that (1) Wachovia was negligent; (2) Wachovia tortiously interfered with Holman and

---

[*] Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] Because the questions to be certified are essential to the resolution of this case, the issues on cross-appeal cannot be decided without the answers to the certified questions.

2

Toomey's business relationship with IMC; (3) Holman and Toomey were entitled to punitive damages; and (4) Wachovia breached its fiduciary duty to Holman and Toomey. Holman and Toomey also appeal the district court's dismissal of their Motion to Alter or Amend the Judgment taking into account pre-judgment interest and the alleged range of compensatory damages. After review of Wachovia's appeal, we certify questions to the Florida Supreme Court.

BACKGROUND

Holman and Toomey were employees and officers of IMC, a mortgage business based in Tampa, Florida. Wachovia was the insurance broker for IMC. In 1997, IMC purchased Holman and Toomey's mortgage business, Central Money Mortgage ("CMM"), and Holman and Toomey were appointed officers and employees of IMC's subsidiary. Each had a five-year employment contract with an annual salary of $300,000 and a severance clause requiring IMC to pay their full salary for the years remaining on the contract if IMC terminated Toomey or Holman without cause. Also in 1997, Joel Williams sold to IMC an Employment Practices Liability Insurance Policy (the "Policy") that covered claims for breaches of written employment contracts.

Under financial pressure, IMC decided to cease operations of its subsidiary and notified Holman and Toomey that it planned to terminate their employment

3

contracts. Holman and Toomey sued IMC in the United States District Court for the District of Maryland, alleging that they had been formally terminated without cause. This litigation resulted in a judgment of $1.8 million in favor of Holman and Toomey against IMC.

IMC was unable to satisfy the judgment and initiated settlement negotiations. During these negotiations, IMC discovered that it had lost the Policy's coverage for breach of employment contract claims. Because the Policy had been due to expire during litigation, IMC had extended its coverage with Wachovia for several months to cover any potential claims, such as Holman and Toomey's breach of employment contract claims. However, in extending the Policy, Wachovia is alleged to have summarily removed coverage for breach of written employment contract claims without IMC's knowledge.

To satisfy the outstanding $1.8 million judgment, IMC executed a settlement agreement with Holman and Toomey. Under the terms of the agreement, Holman and Toomey, for consideration of $1.5 million, dismissed all their causes of action against IMC except the counts for breach of their employment contracts. Holman and Toomey, however, expressly reserved claims against Wachovia:

> *Provided however*, that nothing contained herein shall operate to release or waive any claims the Releasors might have or herein acquire against the insurance companies specified in Sections 3(d) and (e) below, Wachovia, Davis Baldwin, or any partner, shareholder,

4

associate, employee, servant, agent or broker of Federal/Chubb Insurance Company or Wachovia Davis Baldwin for claims which arise out of the claims referenced in Sections 3(d)-(e) below, including, but not limited to, any claims which may be made directly or indirectly to satisfy the $1.8 million judgment awarded by the Court in the Litigation, and further provided that nothing contained herein shall operate to release any obligations of the parties to this Agreement arising under this Agreement.

Additionally, IMC agreed to assign Holman and Toomey "all its rights, including its causes of action, which rights IMC may have under or because of the existence of [the Policy] . . . to secure indemnification sufficient to satisfy" the $1.8 million judgment.

Holman and Toomey subsequently brought suit against Wachovia. Pursuant to IMC's assignment of potential claims to them, they allege (1) that Wachovia breached fiduciary duties owed to IMC, and (2) that Wachovia was negligent in its dealings with IMC. They also allege direct claims against Wachovia alleging (3) intentional interference with their rights under their employment contracts; and (4) breach of fiduciary duties allegedly owed by Wachovia directly to them.

After trial, the district court granted Wachovia judgment as a matter of law on all claims except the count for breach of fiduciary duties owed by Wachovia to IMC, which was submitted to the jury. The jury returned a verdict of $1,069,200 in favor of Holman and Toomey on that claim. Wachovia now appeals, and Holman and Toomey cross-appeal.

5

On appeal, Wachovia argues that the district court erred because: (1) Holman and Toomey's underlying claims against IMC had been unconditionally released and thus, because IMC had no liability, Wachovia could not be liable; (2) a breach of fiduciary duty is a personal claim that cannot be assigned; and (3) Holman and Toomey should not be allowed to receive attorney's fees on behalf of IMC where IMC failed to assign attorney's fees to Holman and Toomey, and where Holman and Toomey failed to prove the specific amount of attorney's fees incurred by IMC.

On cross-appeal, Holman and Toomey argue that the district court erred in granting judgment as a matter of law to Wachovia on their claims.

DISCUSSION

We note initially that the issues raised by Wachovia on appeal are properly before us for review.[2] In this diversity action, neither party contests the

_____

[2] Holman and Toomey argue that Wachovia failed to preserve any of its issues for our review because Wachovia's notice of appeal mentions only the final judgment and the Bill of Costs. This argument lacks merit. Indeed, as we have previously stated, an "'appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment.'" Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 785 n.5 (11th Cir. 2004) (quoting Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989). Wachovia's notice of appeal mentions the April 8, 2005 judgment, and the April 9 Bill of Costs. On April 1, 2005, after full briefing, the district court issued an order setting out "the issues to be tried in this case." This order explicitly states that other issues, such as the effect of IMC's release and the issue of attorney's fees "should not be presented to the jury in this case." These issues were therefore not brought up again during the trial. To hold that they were therefore waived or abandoned for appellate review, as Holman and Toomey urge us to, would be contrary to our own precedent, see Club Car, 362 F.3d at 785 n.5, and undermine the authority of district court judges to administer their cases in an orderly manner. See Inter Medical Supplies, Ltd. v. EBI

6

applicability of Florida law.  Because we find that dispositive questions regarding both (1) Holman and Toomey's release of IMC and (2) the assignability of a claim for breach of fiduciary duty are unsettled under Florida law, we certify two questions to the Supreme Court of Florida pursuant to Fla. Stat. § 25.031[3] and Fla. R. App. P. 9.150(a).[4]

## A.  Simultaneous release of IMC and assignment of IMC's causes of action against Wachovia to Holman and Toomey

---

Medical Sys. Inc., 181 F.3d 446, 455 (3d Cir. 1999) (holding that, under similar circumstances involving the meaning of a contract clause, once the district court had issued "a definitive ruling after full briefing on the disputed contract provision, there was little purpose in repeatedly raising the issue at trial because there was little likelihood that the court would revisit its decision" and therefore the issue was preserved for appellate review by the definitive pretrial ruling).

[3] The statute provides, in pertinent part:

> The Supreme Court of this state may, by rule of court, provide that, when it shall appear to . . . any circuit court of appeals of the United States . . . that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal appellate court may certify such questions or propositions of the laws of this state to the Supreme Court of this state for instructions concerning such questions or propositions of state law, which certificate the Supreme Court of this state, by written opinion, may answer.

Fla. Stat. § 25.031 (2002).

[4] The rule provides:

> On either its own motion or that of a party . . . a United States court of appeals may certify a question of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida.

Fla. R. App. P. 9.150(a).

A central issue in this appeal is whether the district court was correct in allowing Holman and Toomey's claim against Wachovia for breach of fiduciary duty to survive Holman and Toomey's release of IMC. Wachovia argues that the court erred because "the very Settlement Agreement by which Holman and Toomey acquired this claim also extinguished it, by releasing IMC from liability." Holman and Toomey respond that the same settlement agreement, by simultaneously reserving their rights to pursue Wachovia and others for their unpaid judgment against IMC, expressly did not release Wachovia from suit.[5]

While both parties point us to relevant Florida case law, we have found no precedential authority on this particular issue in this context. In Fidelity & Casualty Co. of New York v. Cope, 462 So. 2d 459 (Fla. 1985), for example, the Florida Supreme Court held, in the context of a personal injury tort case, that "absent a prior assignment of the cause of action, once an injured party has

---

[5] As noted above, the relevant portion of the settlement agreement between Holman and Toomey and IMC reads as follows:

*Provided however*, that nothing contained herein shall operate to release or waive any claims the Releasors might have or herein acquire against the insurance companies specified in Sections 3(d) and (e) below, Wachovia, Davis Baldwin, or any partner, shareholder, associate, employee, servant, agent or broker of Federal/Chubb Insurance Company or Wachovia Davis Baldwin for claims which arise out of the claims referenced in Sections 3(d)-(e) below, including, but not limited to, any claims which may be made directly or indirectly to satisfy the $1.8 million judgment awarded by the Court in the Litigation, and further provided that nothing contained herein shall operate to release any obligations of the parties to this Agreement arising under this Agreement.

8

released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained." Id. at 459 (emphasis added). In Cope, the injured party in a vehicle accident secured a $100,000 judgment against two insurance companies, Hartford and Fidelity, who insured the driver and owner of the vehicle, respectively. Each company paid its policy limit of $10,000. Id. at 460. Cope then brought an excess judgment action against Hartford, based on its bad faith failure to settle. Id. Hartford settled this action for $50,000 in return for Cope's execution of a release and a satisfaction of judgment in its favor and in favor of both the owner and driver of the vehicle. Id. Fidelity was not named in this release. Cope then filed another suit for bad faith failure to settle against Fidelity, for the $30,000 which remained unpaid on the final judgment. Id. After a bench trial, the trial court found Fidelity liable for $30,000 and rejected Fidelity's argument that Cope's release in favor of Fidelity's insured barred any subsequent bad faith action. Id. The Supreme Court of Florida reversed, noting that "if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain action for a breach of duty between an insurer and its insured." Id. at 461 (emphasis added).

In Rosen v. Florida Insurance Guaranty Ass'n, 802 So. 2d 291 (Fla. 2001), the Supreme Court of Florida addressed a similar factual situation as that at issue

9

here. In Rosen, the plaintiff, Rosen, sued a law firm that had represented her for, inter alia, negligent supervision, breach of contract, fraud, and breach of fiduciary duty. Id. at 292-93. The firm was defended by the Florida Guaranty Association ("FIGA"), which argued that its liability was limited by statute to $300,000, including defense costs. Id. Rosen and the firm ultimately entered into a settlement agreement upon learning that FIGA had determined that $39,000 remained available after defense costs. Id. Under the terms of the agreement, the firm consented to a judgment of $261,000 against it and FIGA paid Rosen $39,000. Id. In return, Rosen agreed not to record or execute the judgment against the firm, and to try and collect the judgment against FIGA in a separate action. Rosen agreed that after that litigation was resolved, she would release the firm or file a notice of satisfaction of the judgment. Id. After the settlement agreement was executed, FIGA paid Rosen $39,000 without obtaining a release, and Rosen subsequently filed a declaratory judgment against FIGA to have it declared liable for the judgment. Id. at 293-94. The trial court ruled that the settlement agreement had released the law firm and thereby extinguished any liability FIGA had as an insurer. Id. at 294. The Florida Supreme Court reversed, focusing on the language of the settlement agreement and noting that "the settlement agreement clearly demonstrates the intent of the parties not to release

10

FIGA from liability and the underlying claim against the insured was not released." Id. at 297-98. The Florida Supreme Court characterized the settlement agreement at issue there as a covenant not to sue the law firm rather than a release of FIGA, because the settlement agreement expressly reserved Rosen's claims against FIGA. Id. at 298.

As is evident, neither of these cases, nor the others cited by the parties, address the same legal issue we have before us. Cope addressed the question of whether a release or satisfaction of judgment without an assignment could nonetheless allow a third party to maintain a derivative bad faith action based on a breach of duty between the insurer and its insured, and Rosen dealt with whether a settlement agreement between two parties that reserved the right to bring suit against a third party insurer could also extinguish the claim against the third party by including a release of the insured party after the litigation had been resolved. By contrast, in the present case the question is whether a settlement agreement between two parties that explicitly contains both an assignment of causes of action against a third party (from IMC to Holman and Toomey) and an immediate release (by Holman and Toomey of IMC) allows the assignee to bring a cause of action for breach of fiduciary duty against the third party.

Because we maintain more than "substantial doubt" as to how the issue

11

before us would be resolved under Florida law, we certify this question to the Florida Supreme Court. Jones v. Dillard's, Inc., 331 F.3d 1259, 1268 (11th Cir. 2003) ("Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court.").

B. Assignability of a claim for breach of fiduciary duty

The second, and related, question that we consider unsettled under Florida law relates to the assignability of claims for breach of fiduciary duty. Specifically, Wachovia argues that the recent Florida Supreme Court decision in Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So. 2d 755 (Fla. 2005), makes clear that claims for breaches of fiduciary duties are non-assignable. Holman and Toomey respond that the Florida Supreme Court, in Forgione v. Dennis Pirtle Agency, Inc., 701 So. 2d 557 (Fla. 1997), had previously made clear that relationships between an insured and an insurance agent are not so personal as to preclude assignment of a tort claim against an insurance agent. Neither decision, however, addresses the question before us here. Cowan involved the assignability of legal malpractice claims involving the preparation of private placement memoranda, and Forgione dealt with whether an insured could assign a claim for negligence against an insurance agent for failure to obtain proper coverage. Neither the holdings nor the

12

reasoning in these cases instruct us as to whether claims for breach of fiduciary duties may be assigned. Accordingly, we certify the following questions to the Florida Supreme Court:

QUESTIONS CERTIFIED

I. WHAT IS THE EFFECT OF A SETTLEMENT AGREEMENT BETWEEN TWO PARTIES THAT EXPLICITLY CONTAINS BOTH AN ASSIGNMENT OF CAUSES OF ACTION AGAINST A THIRD PARTY INSURER AND AN IMMEDIATE RELEASE OF THE INSURED ON THE SAME CAUSES OF ACTION?

II. CAN A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST AN INSURANCE BROKER BE ASSIGNED?

The phrasing of these two questions is not intended to limit the Florida Supreme Court's consideration of the issues involved or the manner in which it gives its answers. "This latitude extends to the Supreme Court's restatement of the issue or issues . . . ." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). The record in this case and the briefs of the parties shall be transmitted to the Florida Supreme Court for assistance in answering these questions.

**QUESTIONS CERTIFIED.**