[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10044
Non-Argument Calendar
_____

D.C. Docket Nos. 6:19-cv-00699-PGB; 6:15-bk-06458-CCJ

WILLIAM W. COLE, JR.,

Plaintiff-Appellant,

versus

PRN REAL ESTATE & INVESTMENTS, LTD.,
NANCY ROSSMAN,
LORI PATTON, Trustee,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 29, 2020)

Before MARTIN, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

William Cole, Jr., appeals the district court's order affirming the bankruptcy court's resolution of his Chapter 7 bankruptcy petition. He argues that the bankruptcy court incorrectly apportioned the proceeds from the sale of his lakefront homestead property. Cole moves to certify the question of apportionment to the Florida Supreme Court. Cole also says that the State of Florida has title to the portion of his property beneath the lake's surface, and that he did not mislead the bankruptcy court by gerrymandering his homestead parcel to exclude this underwater portion. After careful consideration, we deny Cole's motion to certify and affirm the judgment of the bankruptcy court.

## I.

In 2001, Cole purchased 2.95 acres of property on Lake Minnehaha in the city of Maitland, Florida. The property included approximately .765 acres of dry land and 2.185 acres of land beneath the surface of the lake. Cole built a 10,000 square foot home on the property and lived there with his family. Cole held title to the property, as a single parcel of land, through a self-settled revocable trust (the "Trust").

In 2015, however, Cole began preparing to file for bankruptcy after stalled negotiations with his creditor, PRN Real Estate & Investments, Ltd. ("PRN"). In January 2015, Cole asked a surveyor to divide his lake property into two parcels. The first parcel encompassed the dry land containing Cole's home, dock, and

2

boathouse, and the second parcel encompassed the land at the lake bottom. In June 2015, Cole executed a special warranty deed conveying the lake bottom land from the Trust back to the Trust.

In July 2015, Cole filed his Chapter 7 bankruptcy petition. His sworn schedules listed his lake property as two separate parcels of land: the dry property (with an estimated value of $2.5 million) and the lake bottom property (with a value of $1,000). Cole designated the dry property as his homestead. Under the Florida Constitution, a debtor's homestead is exempted from forced sale following bankruptcy. See Fla. Const. art. X, § 4. But if a debtor's homestead is located within a municipality, as is Cole's, only one-half acre of contiguous land is protected by the homestead exemption. Id. By claiming the homestead exemption, Cole sought to shelter the dry property—the smaller of the two newly created parcels—from forced sale.

Both PRN and Cole's bankruptcy trustee, Lori Patten, objected to Cole's designation of the dry property as his homestead. PRN asked the bankruptcy court to deny Cole a homestead exemption in light of Cole's attempt to split his lake property and thereby fraudulently gerrymander his homestead. Both PRN and the trustee argued that the bankruptcy court should consider Cole's dry and submerged property as one parcel when evaluating Cole's homestead exemption claim.

3

Cole responded that he was entitled to a homestead exemption regardless of his pre-bankruptcy conduct.  He also raised a new argument that the land at the bottom of the lake belonged to the State of Florida, so the bankruptcy court could not consider it part of his homestead.

The bankruptcy court held a two-day trial on the issue of Cole's homestead property.  After trial, the court found that Cole had been "misleading" in claiming his lake property as two separate parcels in the bankruptcy petition, and that his explanations for the split were "not credible."  Nevertheless, it held Cole was still entitled to a homestead exemption under Florida law.  The court then addressed which portions of the lake property were relevant to Cole's homestead exemption claim.  Because all agreed that the lake bottom property had "little value and utility," the court treated Cole's lake property "as indivisible" and directed the sale of the property with apportionment of the proceeds to Cole and his creditors.

The bankruptcy court declined to consider the question of the lake bottom property's ownership, because to do so would give credence to Cole's "blatant and inequitable" attempt to gerrymander his property before filing for bankruptcy.  The court also found that the issue of whether title to the lake bottom land belonged to Cole or the State of Florida was not a proper question for the court to decide, especially since Florida had not asserted claim to title in almost 150 years of record title history.  Instead, the court considered the State's interest in the lake bottom

4

land "as a potential cloud on title" and assumed "that Debtor owns all of the Property as a single indivisible parcel."

Finally, the bankruptcy court allowed Cole to claim a homestead exemption despite his misleading pre-bankruptcy conduct. Because Cole's homestead property was more than one-half acre and indivisible, the court decided that Cole could benefit from the homestead exemption by receiving a portion of the proceeds from the sale of his property. The court held that Cole would receive proceeds in the amount of a simple percentage of the exempt acreage, here .5 acres, divided by the total acreage of his property, here 2.95 acres. From this calculation, Cole would receive 16.95% of the proceeds from the sale of his property.

Cole appealed this ruling to the district court for the Middle District of Florida. The district court affirmed the bankruptcy court's decision in full. Cole appealed, raising several claims of error in the bankruptcy court's decision. Cole also moves this Court to certify a question of law to the Florida Supreme Court.

**II.**

"In a bankruptcy case, this Court sits as a second court of review." In re Brown, 742 F.3d 1309, 1315 (11th Cir. 2014) (quotation marks omitted). "[W]hen a district court affirms a bankruptcy court's order . . . this Court reviews the bankruptcy court's decision." Id. "We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo." Id. (quotation marks

omitted).  We may affirm on any ground that is supported by the record.  Big Top

Koolers, Inc. v. Circus-Man Snacks, Inc., 528 F.3d 839, 844 (11th Cir. 2008).

### III.

### A.

Cole first argues that the bankruptcy court erred by allocating the proceeds

of the homestead sale by "a simple percentage of the exempt acreage to the total

acreage of the property."  He says that the bankruptcy court contradicted "binding

Eleventh Circuit precedent" because our Court had established a different standard

for allocating these proceeds.  Specifically, he says our Court has endorsed a

method of calculation that the Eighth Circuit set forth in O'Brien v. Heggen, 705

F.2d 1001 (8th Cir. 1983).

We begin with the text of the Florida constitutional homestead exemption.

In relevant part, Article 10, § 4, of the Florida Constitution provides:

> There shall be exempt from forced sale under process of
> any court . . . the following property owned by a natural
> person: a homestead, if located outside a municipality, to
> the extent of one hundred sixty acres of contiguous land
> and improvements thereon . . . ; or if located within a
> municipality, to the extent of one-half acre of contiguous
> land, upon which the exemption shall be limited to the
> residence of the owner or the owner's family.

Fla. Const. art. X, § 4(a) (emphasis added).

The bankruptcy court held that Cole was entitled to the benefit of the

homestead exemption here.  Cole's property, however, exceeded the one-half acre

6

of property allowed for a municipal homestead.  Ordinarily, if a Florida homeowner's property "exceeds the one-half acre allowed for [a] municipal homestead," then "he cannot declare as exempt his entire parcel, but may select his homestead in any continuous shape from his qualifying lands."  In re Kellogg, 197 F.3d 1116, 1120 (11th Cir. 1999) (quotation marks omitted).  However, the bankruptcy court determined that, under Kellogg, Cole could not carve out a half-acre homestead from his property.  The court reasoned that Cole's land was indivisible, since the lake bottom property was worthless if separated from the dry property.  If a homestead parcel is indivisible, "sale [of the parcel] and apportionment of the proceeds is an equitable solution [and] allows for an appropriate recognition of the debtors' homestead exemption."  In re Englander, 95 F.3d 1028, 1032 (11th Cir. 1996).  The bankruptcy court thus ordered the parcel sold and decided that Cole would receive proceeds in the amount of "a simple percentage of the exempt acreage [.5 acres] to the total acreage of the property."

On appeal, Cole does not challenge the bankruptcy court's finding of indivisibility.[1]  Neither does Cole dispute that the proper way to apply the homestead exemption to indivisible land is to sell the property and apportion the proceeds.  Instead, Cole takes issue with the bankruptcy court's method of

---

[1] Cole does argue that the bankruptcy court should have found that the submerged land never belonged to him, but to the State of Florida.  However, Cole makes no argument that, if he owns the entire parcel, the submerged portion was divisible from the dry portion.

7

apportioning the proceeds from the sale of his land. Cole argues that the bankruptcy court erred by not following the Eighth Circuit's decision in O'Brien.

O'Brien considered the application of Minnesota's homestead exemption statute to a parcel of land exceeding the protected homestead area. 705 F.2d at 1003. The O'Brien debtor acknowledged that his outsized parcel should be sold. Id. But he argued that the non-exempt portion of his land was "virtually worthless, thus entitling him to keep the [entire] proceeds of the sale, less a nominal amount of $1,000 attributable to the non-exempt portion." Id. The Eighth Circuit rejected this argument. It held that the bankruptcy court had fairly apportioned the proceeds from the sale by assessing the value per square foot of the unimproved land, then multiplying this value "to the total number of square feet in excess of the [homestead] acre limitation." Id. at 1004 & n.4. This calculation "determined the non-exempt portion of the proceeds." Id. at 1004. The rest of the proceeds went to the debtor in recognition of his homestead exemption. See id. This method, the Eighth Circuit held, was not "clearly erroneous." Id.

Cole argues that, under O'Brien, the bankruptcy court should have apportioned the parcel sale proceeds by considering only the value of the unimproved land. If the bankruptcy court were to determine the non-exempt portion of the proceeds using the value of the land in its unimproved state, Cole would retain the full value of his home and other improvements through the

8

homestead exemption.  Cole argues that this outcome is consistent with the typical application of the Florida homestead exemption, where debtors are permitted to keep the full value of their half-acre homestead, including the value of any improvements to this parcel.

O'Brien interpreted another state's homestead exemption and the surrounding case law.  See 705 F.2d at 1003–04 (applying Minnesota law).  And contrary to Cole's assertion, our Court has not endorsed O'Brien's method of apportioning homestead sale proceeds.  Cole points to this Court's decisions in Kellogg and Englander.  But in Englander, our Court merely noted that the Eighth Circuit had approved "the sale of a property and apportionment of the proceeds in a situation where the property exceeded the state homestead limitation on area." 95 F.3d at 1032.  Kellogg's reference to O'Brien stood for the same proposition: "that partition was equitable and proper when the debtor's homestead exceeded the amount allowed in the [homestead exemption] and was indivisible."  197 F.3d at 1121.  Neither Kellogg nor Englander discussed O'Brien's method for apportioning sale proceeds.  The bankruptcy court thus did not contradict "binding Eleventh Circuit precedent" by declining to apply O'Brien when apportioning the proceeds in Cole's case.

Beyond this, the only court in this circuit to address apportionment has recognized that, under Florida law, it is permissible to apportion the proceeds of a

9

homestead parcel sale, including the value of any improvements, by a pure percentage of protected acreage to overall acreage. In In re Quraeshi, 289 B.R. 240 (S.D. Fla. 2002), the bankruptcy court applied the Florida homestead exemption to order a sale of the debtor's indivisible, oversized property and apportionment of the proceeds. See id. at 241. The bankruptcy court determined "that one-half acre constituted 19 percent of the total [parcel] acreage . . . [so] the Debtor was entitled to 19 percent of the [sale] proceeds." Id. In this way, the bankruptcy court apportioned the total proceeds by the percentage of homestead-protected acreage to overall acreage. See id.

The bankruptcy court in Cole's case followed the process used by the bankruptcy court in Quraeshi by apportioning the sale proceeds to Cole based on a percentage of homestead-protected acreage to overall acreage. Cole argues that he should be able to carve out the full value of one-half of an acre of his land, including the value of his home and other improvements. However, the Quraeshi court held that "permitting a debtor to 'carve out' a one-half acre of land[] refers only to cases where it is possible, and legal and practical, for the debtor's real property to be physically partitioned into a homestead-exempt one-half acre . . . and a remaining non-exempt portion." Id. at 244. And although Cole relies on O'Brien, Quraeshi observed that it was not bound by O'Brien's interpretation of an entirely different statute and accompanying case law. Id. at 245 n.1.

10

Cole points out that, on appeal to the district court, the <u>Quraeshi</u> debtor raised a different issue and "d[id] not challenge the bankruptcy court's ruling . . . that the Debtor is entitled to 19 percent of the claimed homestead." <u>Id.</u> at 242. Nevertheless, the bankruptcy court's apportionment in <u>Quraeshi</u> still supports that apportioning proceeds by percentage of homestead acreage to overall acreage is a valid interpretation of the Florida homestead exemption.

In sum, it was not legal error for the bankruptcy court to follow <u>Quraeshi</u>'s interpretation of the Florida homestead exemption instead of <u>O'Brien</u>'s interpretation of Minnesota law.  Cole asks to certify the question of whether apportionment under Florida homestead exemption follows the rule in <u>O'Brien</u> or the rule in <u>Quraeshi</u>.  This Court may certify a question to the Florida Supreme Court if "we maintain more than 'substantial doubt' as to how the issue before us would be resolved under Florida law." <u>Toomey v. Wachovia Ins. Servs., Inc.</u>, 450 F.3d 1225, 1231 (11th Cir. 2006).  In light of the precedent supporting the bankruptcy court's apportionment of the proceeds, however, we do not have substantial doubt as to the correctness of the bankruptcy court's decision.  <u>See</u> <u>id.</u>

## B.

Next, Cole argues that the bankruptcy court should have decided whether he or the State of Florida has ownership of the lake bottom land.  Cole says that the bankruptcy court should have determined that the State of Florida owns the

11

submerged land in his parcel.  PRN responds that Cole is estopped from challenging his ownership of the lake bottom land, because he claimed ownership of this land in the sworn schedules of his bankruptcy filings.  We agree with PRN.

Generally, "a party is bound by the admissions in his pleadings."  Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983).  For this reason, "[n]umerous courts have held that statements in bankruptcy schedules that are executed under penalty of perjury are eligible for treatment as judicial admissions."  Ussery v. Allstate Fire & Cas. Ins. Co., 150 F. Supp. 3d 1329, 1344 & n.10 (M.D. Ga. 2015) (quotation marks omitted and alterations adopted) (collecting cases); see, e.g., In re Kane, 470 B.R. 902, 925 (Bankr. S.D. Fla. 2012) (noting that bankruptcy schedules "are signed under oath and constitute admissions with regard to the information contained therein"); Matter of Musgrove, 187 B.R. 808, 812 (Bankr. N.D. Ga. 1995) (finding that an entry in the debtor's schedule "constitutes a judicial admission").  A fact judicially admitted is a fact "established not only beyond the need of evidence to prove [it], but beyond the power of evidence to controvert [it]."  Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1178 (11th Cir. 2009).

In his bankruptcy schedules, Cole swore under penalty of perjury that he owned the submerged land by revocable trust.  Cole stated that he was the "Owner" of the lake bottom parcel and the "Deed/Legal Title is held by: William

12

W. Cole, Jr. Family Trust." Cole never amended his sworn schedules. Even so, at the trial held in the bankruptcy court, Cole argued for the first time that the State of Florida owned the submerged land.

Cole is bound by his sworn admission in the bankruptcy schedules. He cannot later contradict this admission with evidence that the State of Florida owned the lake bottom land. See Cooper, 575 F.3d at 1178. Thus, the bankruptcy court did not err in declining to decide ownership of the parcel, because Cole had admitted his ownership. We affirm the bankruptcy court's decision on this ground.

C.

Finally, Cole argues that the bankruptcy court clearly erred in finding that he misleadingly gerrymandered his homestead parcel. We hold that, in light of the factual record, this finding was not clear error.

The bankruptcy court held that Cole's attempts to split his land into dry and submerged parcels were misleading and even "a species of fraud." The bankruptcy court considered the fact that Cole, as a real estate investor and developer of over 20 years, had "admitted expertise in matters of real estate." The court noted that, two days after negotiations between Cole and his creditor PRN went south, Cole asked a surveyor to split his lake property into dry and wet land. Further, Cole did not use the "ordinary high water mark" to divide his parcel, but requested a boundary line that included his boathouse in the dry parcel he claimed as his

13

homestead.  Cole then executed a warranty deed to convey the lake bottom parcel from the Trust back to the Trust.  However, Cole denied that he split his property solely for fraudulent "pre-bankruptcy planning" reasons.  Yet Cole did not seek approval from the city of Maitland before executing this deed, even though he had experience obtaining a zoning variance when splitting similar parcels.  And of course, Cole represented in his bankruptcy schedules that the dry parcel was his homestead and that the wet parcel was an unrelated property.

On these facts, the bankruptcy court permissibly found that Cole misleadingly manipulated his homestead exemption by attempting to split his parcel.  And even if this finding was clear error, Cole suffered no harm from this determination, because the bankruptcy court held he was "nevertheless entitled to his constitutional homestead exemption."

**IV.**

The bankruptcy court did not apply an incorrect legal standard to apportion the sale proceeds of Cole's homestead property.  Neither did the bankruptcy court wrongly decline to hold that Cole's submerged property was owned by the State of Florida.  Finally, the bankruptcy court's factual findings do not amount to clear error.  The judgment of the bankruptcy court is **AFFIRMED**, and Cole's motion to certify a question to the Florida Supreme Court is **DENIED**.